IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

R & P SEAFOOD/SHELLFISH, INC., and,
FOUR SEAS, INC.
Plaintiffs,

v.

KENNEBUNK SAVINGS BANK,

Defendant.

CIVIL ACTION NO. 05-cv-10420-MLW

**PLAINTIFFS' OPPOSITION MEMORANDUM TO DEFENDANT'S MOTION TO DISMISS/CHANGE OF VENUE**

Plaintiffs R & P Seafood/Shellfish, Inc. ("R & P") and Four Seas, Inc. ("Four Seas") oppose defendant, Kennebunk Savings Bank's ("KSB") Motion to Dismiss pursuant to F.R.Civ.P. 12(b)(2) and defendant's Motion for change of venue to the United States District Court for the District of Maine pursuant to F.R.Civ.P. 12(b)(3). In addition to this Memorandum, plaintiffs rely on the Affidavit of Michael Scola ("Scola Aff."), attached at Exhibit A, the Affidavit of Vincent Clough ("Clough Aff.") attached at Exhibit B, the Affidavit of Robert M. Bradway, from the United States Bankruptcy Court for the District of Maine, Chapter 11 Case No. 05-20111 and 05-20112 ("Bradway Aff.") attached at Exhibit C, the Affidavit of Donald Lundin ("Lundin Aff.") attached at Exhibit D and the related Exhibits E through I attached.

## I. RELEVANT FACTS

### A. The banking relationship

KSB was the bank for Robert J. Preble & Sons, Inc. and Preble Properties, LLC (collectively referred to as "Preble"). Preble maintained its deposit and checking accounts with KSB. Preble also had a commercial real estate loan, secured by a real estate mortgage, and a line of credit, secured by substantially all of the assets of Preble, from KSB. *See* Exhibit B, Clough Aff., at ¶ ¶ 4-5; *See also* Exhibit C, Bradway Aff., at ¶ 3.

During the first half of 2004, Preble suffered significant operating losses, described by an owner of Preble as "very large operating losses…" *See* Exhibit B, Clough Aff., at ¶ 6; *See* Exhibit C, Bradway Aff., at ¶ 4. KSB required Preble to send weekly financial statements to KSB due to Preble's financial condition. *See* Exhibit B, Clough Aff., at ¶ 7.

KSB made a "verbal commitment…to complete [the] refinancing in the fall of 2004 that would permit the pay-down of the Line of Credit and amortize the trade debt over 10 to 20 years." *See* Exhibit C, Bradway Aff., at ¶ 3.

At the time of filing a bankruptcy petition, Preble had assets of approximately $600,000 and liabilities of approximately $2,900,000. *See* Exhibit C, Bradway Aff., at ¶¶ 15-16; *See* Exhibit B, Clough Aff., at ¶ 7. After the time of filing the bankruptcy petition, Preble owed KSB $283,000 on its line of credit. An officer of Preble opined that, on liquidation, Preble's machinery, equipment, inventory and accounts receivable would be insufficient to pay KSB in full on the line of credit. *See* Exhibit C, Bradway

Aff., at ¶¶ 15-17. Similarly, Preble did not believe that it had the ability to pay anything to the SBA, which held a junior lien secured by the real estate in the amount of $362,755.37. KSB's first mortgage was in an amount in excess of $523,000. The proposed buyer of Preble's assets valued the real estate at only $475,000. *See* Exhibit C, Bradway Aff., at ¶¶ 18-21. By late 2004, Preble appeared to be in a very precarious financial situation.

**B. The letters**

Despite Preble's tenuous financial condition, on or about October 8, 2004, Eric A. Andrews, a Vice President at KSB ("Andrews") wrote the letters (the "letters") attached to Plaintiffs' Complaint at Exhibit A. Andrews addressed the letters specifically to R & P and Four Seas in Massachusetts.

Vincent Clough, the President of Preble requested the letters from Andrews because various suppliers had stopped selling fish to Preble or threatened to stop selling fish to Preble. Mr. Clough informed Andrews that he would personally deliver the letters to the addressees at their businesses in Massachusetts. *See* Exhibit B, Clough Aff., at ¶ 13. Mr. Clough delivered the letters personally to plaintiffs. *See* Exhibit B, Clough Aff., at ¶ 14.

In this litigation, two Massachusetts corporations allege, inter alia, misrepresentation and violations of M.G.L. c. 93A by KSB. In the letters, Andrews stated that, "...all accounts are handled in a satisfactory manner..." Plaintiffs allege that this statement was untrue.

Plaintiffs, in Massachusetts, relied to their detriment on misrepresentations by continuing to sell fish to Preble and not taking action to collect monies outstanding. *See* Exhibit A, Scola Aff., at ¶¶ 7-8; *See* Exhibit D, Lundin Aff., at ¶¶ 6-7.

**C. The December 21 & December 23, 2004 Sweep**

On December 21, 2004, presumably from its rights of set-off contained in its loan documents, KSB swept $24,742.60 from Preble's account. On December 23, 2004, KSB swept $113,024.79 from Preble's account. Preble's outstanding checks were returned for insufficient funds. *See* Exhibit B, Clough Aff., at ¶ 15. In January 2005, Preble filed a bankruptcy petition. *See* Summary of Schedules, In re Robert J. Preble & Sons, Inc. and Preble Properties, LLC, United States Bankruptcy Court for the District of Maine, Chapter 11 Case No. 05-20111 and 05-20112, attached at Exhibit E.

## II. ARGUMENT

### A. The Court has Personal Jurisdiction over Kennebunk Savings Bank.

This Court has specific personal jurisdiction over KSB pursuant to the Massachusetts long arm statute (M.G.L.A. 223A, § 3(c)). KSB "caused tortious injury by an act or omission in this commonwealth". Plaintiff's allegations, contained in the Complaint and the affidavits attached hereto, meet their burden to establish that the Massachusetts long arm statute grants jurisdiction and that the exercise of jurisdiction does not violate the defendant's due process rights. Plaintiffs acknowledge that, pursuant to the prima facie method employed by most courts, they have the burden of proving personal jurisdiction. In a diversity action, the federal court determines whether a non-

resident defendant is subject to its jurisdiction as a state court in the forum state would decide the issue. Sawtelle v. Farrell, 70 F.3d 1381, 1387.

**1. Specific jurisdiction is established pursuant to the Massachusetts Long-Arm Statute, M.G.L.A. 223A, § 3(c).**

A Massachusetts court may exercise personal jurisdiction over a nonresident defendant who "...caused tortious injury by an act or omission in this Commonwealth." M.G.L.A. 223A, § 3(c) (The "Massachusetts long arm statute"). In Massachusetts, the court's focus is "...on the substantive nature of the tort involved rather than the more formalistic consideration of the location of the parties..." Liu v. DeFelice, 6 F.Supp.2d 106, 109 (1998). In Liu, the Massachusetts District Court concluded that Massachusetts' long arm statute authorized specific personal jurisdiction based on the nonresident's conduct of accessing a Massachusetts citizen's confidential credit information online from a New York office. Id., at 109. In Lui, as in the case at bar, the defendant did not physically enter Massachusetts. The focus must be on the substance, not the form. The substance of the instant action is KSB causing a tortious injury in Massachusetts. *See also*, Murphy v. Erwin-Wasey, 460 R.2d 661, 664 (1st Cir. 1972) ("We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to the jurisdiction of another state by sending a personal messenger into that state bearing a fraudulent misrepresentation but not when it follows the more ordinary course of employing the United States Postal Service as its messenger.") Id., at 664.

In the recent case of Northern Laminate Sales, Inc. v. Davis, 403 F.3d 14 (2005), the United States Court of Appeals affirmed the decision of the United States District

Court for the District of New Hampshire confirming specific personal jurisdiction over a nonresident defendant in a case strikingly similar to the one at bar. In *Northern Laminate Sales*, a New York citizen caused injury to a New Hampshire citizen by tortiously inducing the New Hampshire citizen to extend credit to a New York corporation. *Id.*, at 21-26. In fact, the United States Court of Appeals for the First Circuit affirmed the district court's exercise of specific personal jurisdiction based on alleged fraudulent misrepresentations during a single meeting in New York followed up by the defendant's subsequent letter to the plaintiff in New Hampshire. In the letter, the defendant reiterated his "...commitment to meet [the plaintiff's] payment terms... and assur[ed] [the plaintiff] that [the parent corporation]...stands behind this commitment and all confirmed obligations of [the subsidiary corporation] to [the plaintiff]. [The defendant] then concluded the letter 'if there is ever a[n] issue with payment, simply send me an e-mail..." Id., at FN 6.

The relevant portion of the New Hampshire long arm statute (N.H.Rev.Stat.Ann. 510:4(I)), at issue in *Northern Laminate Sales*, mirrors section 3(c) of the Massachusetts long arm statute.

In the instant action, the Defendant wrote the letters attached to the plaintiffs' Complaint addressed to the plaintiffs in Massachusetts. The defendant knew that Preble was to personally deliver the letters to the plaintiffs in Massachusetts. *See* Exhibit B, Clough Aff., at ¶¶ 12-14. The defendant made specific representations in the letter, including "[a]ll accounts are handled in a satisfactory manner." Based on the defendant's representations, plaintiffs accepted Preble's orders and shipped fish located in

Massachusetts to Preble. *See* Exhibit A, Scola Aff., at ¶¶ 7-8; *See* Exhibit D, Lundin Aff., at ¶¶ 6-7.

**2. Due Process Analysis**

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Northern Laminate Sales, Inc. v. Davis*, 403 F.3d at 25 (quoting, *Int'l Shoe Co.*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). KSB's contacts with Massachusetts satisfy the required three part analysis.

**a. Relatedness**

Plaintiffs must prove that the misrepresentation claim asserted directly arose out of, or related to, KSB's Massachusetts activities. *See* *Northern Laminate Sales*, 403 F.3d at 25. A defendant need not be physically present in the forum state to cause injury, meeting the "activity" requirement of the relatedness element. *Calder v. Jones*, 465 U.S. 783, 789 (1984). KSB addressed the letters to the Massachusetts plaintiffs at their addresses in Massachusetts. These letters were not generic. They were not, as defendants argue, simply "to whom it may concern".

Preble informed Andrews that Preble's suppliers were "shutting him off." *See* Exhibit B, Clough Aff., at ¶¶ 10-11. But for the letters, Preble arguably would have been shut off. *See* Exhibit A, Scola Aff., at ¶ 7; *See* Exhibit D, Lundin Aff., at ¶ 6; *See* Exhibit B, Clough Aff., at ¶¶ 10-14.

KSB should have reasonably expected reliance, in Massachusetts, which did occur. The plaintiffs' reliance in Massachusetts (i.e., "activity") resulted in the injury alleged (i.e., extending further credit and forgoing collection activity).

**b. Purposeful availment**

The court's focus on this second element is on "voluntariness and forseeability." Sawtelle, 70 F.3d at 1391. As in Northern Laminate Sales, the defendant "knowing full well that his statements would induce [plaintiff's] reliance, made misrepresentations in the face of the knowledge that his statements would likely cause financial injury to [plaintiff] in [the forum state]." Northern Laminate Sales, 403 F.3d at 25-26. KSB knew that Preble's suppliers would rely on the letters and sell fish on credit. "The knowledge that the major impact of the injury would be felt in the forum State constitutes a purposeful contact or substantial connection whereby the intentional tortfeasor could reasonably expect to be haled into the forum State's courts to defend his actions." *Hugel v. McNell*, 886 F.2d 1, 4 (1st Cir.1989). *See also*, Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 983 (1st Cir.1986) ("Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state. The element of intent persuades us that there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation, for such a sender has thereby 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State…'" Id., at 983 (quoting Murphy, 460 F.2d at 664.

**c. Reasonableness**

The five "gestalt factors" provided by the Supreme Court favor litigating this matter in Massachusetts. As in Northern Laminate Sales, the forum state's "...interest in redressing harms against its citizens, [plaintiffs'] interest in obtaining convenient and effective relief from a court in its own state, and that the efficient administration of justice would be served given the district court's familiarity with [the forum state's] law that governs the dispute." Northern Laminate Sales, 403 F.3d at 26. Plaintiffs assert claims pursuant to M.G.L. c. 93A, which this court has familiarity with and an interest in redressing the harm against its citizens.

**B. Diversity Jurisdiction is established**

Defendant's reliance on Zahn v. International Paper Co., 414 U.S. 291 (1973) is misplaced. Defendant fails to consider the plaintiffs' state consumer protection act violations alleged in the Complaint pursuant to M.G.L. c. 93A. "It is well-established that colorable multiple damage claims should be included in the amount-in-controversy calculus." Payne v. Goodyear Tire & Rubber Co., 229 F.Supp.2d 43 (2002). M.G.L. c. 93A damages "are a form of punitive damages, and '[w]here both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount.'" F.C.I. Realty Trust v. Aetna Cas. & Sur. Co., 906 F.Supp. 30, 32 n. 1 (D.Mass.1995) citing Bell v. Preferred Life Assur. Soc., 320 U.S. 238, 240 (1943).

Plaintiffs assert claims pursuant to M.G.L.A. c. 93A in addition to the misrepresentation claim. It is these claims which raise each of the plaintiff's claims to a sufficient amount to satisfy the threshold for diversity jurisdiction in this court.

Furthermore, this court concluded that *Zahn* was superseded by the Judicial Improvements Act of 1990 codified at 28 U.S.C. § 1367, which conferred supplemental jurisdiction over plaintiffs' claims not meeting the amount in controversy threshold ("[a]fter careful examination of the issue, I am persuaded that *Zahn* is dead..." *Payne*, 229F.Supp.2d at 43-48).

**C. Venue**

As defendant acknowledges, the plaintiffs' choice of forum is entitled to great weight. *S-G Securities, Inc. Fuqua Investment Co.*, 466 F.Supp. 1114, 1122 (D.Mass. 1978). The defendant's argument about convenience of the parties and witnesses is not supported by the facts. Plaintiffs are two small fish brokers. *See* Exhibit A, Scola Aff., at ¶¶ 1-4; *See* Exhibit D, Lundin Aff., at ¶¶ 1-3. KSB is a State Chartered Savings Bank with $613,818,000 in assets, $533,200,000 in deposits and $509,236,000 in loans as of June 30, 2004. *See* Exhibit F, Exhibit III, at p. 34 Annual Report From the Superintendent of the Bureau of Financial Institutions to the Legislature, (June 15, 2005) copy of Exhibit III only attached at Exhibit F (document available at http://mainegov-images.informe.org/prf/bkg/2005Legrep.pdf.). As this court so aptly stated in *Home Owners Funding Corp. of America v. Century Bank*, 695 F.Supp. 1343 (1988), "[o]ne imagines, however, that representatives of [defendant], a company with assets of $170,000,000, will not be preparing for trial on a bench on Boston Common." *Id.*, at 1347. Defendant's counsel, located in Maine, is admitted to practice before this court and the Motion to Admit James M. Bowie, *Pro Hac Vice* was recently allowed.

Defendant argues that the number of witnesses from Maine in this litigation will favor venue in Maine as the most convenient forum. First, plaintiffs argue that this case

will largely be a document case. The documents at issue will be the product of the defendant. The question in this case will be the veracity of the letters. Furthermore, the defendant's argument that Preble employees will be difficult to compel attendance as out of state witnesses is not proven. In fact, Preble no longer operates and we do not know how long former Preble employees will live in Maine (i.e., will they be citizens of Maine at the time of a trial). Next, most of the witnesses will be the defendant's employees. For purposes of deposition, it is a one hour and ten minute drive from KSB's headquarters to plaintiff's counsel's office in Peabody (*See* Mapquest directions at Exhibit G).

Lastly, defendant argues that it may need to litigate this matter in a third forum state if the action is not transferred to Maine. American Seafood Processing LLC ("ASP"), a Delaware corporation sent a demand letter to KSB, which is attached to defendant's Motion at Exhibit B. The attorney for American Seafood Processing LLC is a Massachusetts attorney. ASP's business address is in New Bedford, Massachusetts (*See* 2004 Annual Report of American Seafoods Processing LLC A Foreign Limited Liability Corporation at Exhibit H).

This court should determine that the defendant has not met its burden pursuant to 28 U.S.C § 1404(a).

**III. Conclusion**

Plaintiffs respectfully request that the defendant's Motion be DENIED, finding that this court can exercise specific personal jurisdiction over the defendant. Plaintiffs further request that the defendants Motion to Change Venue be DENIED.

**Request for Oral Argument**

Plaintiffs request oral argument on this motion pursuant to L.R.D.Mass. 7.1(D).

FOR THE PLAINTIFFS,
R & P SEAFOOD/SHELLFISH, INC. and
FOUR SEAS, INC.,

Marc D. Kornitsky, Esq.
Antico, Barrett, Burke & Kornitsky LLP
One Essex Green Drive
Peabody, MA 01960
(978) 532-5140
mkornitsky@abblegal.com
Attorney for Plaintiffs
Bar No. 564552

**Certificate of Service**

I, Marc D. Kornitsky, attorney for the plaintiffs, hereby certify that I served a copy of this Opposition Memorandum by sending a true copy of same on this date, May 27, 2005, via U.S. Mail, postage pre-paid to: Lisa F. Bendetson, Esq., Thompson & Bowie, LLP, Three Canal Plaza, P.O. Box 4630, Portland, ME 04112.

Marc D. Kornitsky, Esq.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

R & P SEAFOOD/SHELLFISH, INC., and,
FOUR SEAS, INC.
Plaintiffs,

v.

CIVIL ACTION NO. 05-cv-10420-MLW

KENNEBUNK SAVINGS BANK,

Defendant.

**Affidavit of Michael Scola**

I, Michael Scola, under oath, do make this affidavit based upon my personal knowledge. I state as follows:

1. My name is Michael Scola. I am the Vice President of R & P Seafood/Shellfish, Inc. ("R & P"), which is a Massachusetts corporation with a principal address of 8 Seafood Way, Units 5-6, Boston, Massachusetts.
2. In 1972, my father and Roland Harrington formed Roland & Paul Seafood, Inc., which merged into R & P.
3. R & P engages in the purchase and sale of fresh fish from a leased facility in Boston.
4. R & P had approximately $12,000,000 in sales for fiscal year 2004, which ended April 2005. R & P currently has 18 employees.

5. I reviewed the Complaint filed in this matter and I believe that all factual matters to which I have knowledge, as contained in that document, to be true, to the best of my knowledge and belief.
6. I received the October 8, 2004 letter ("the letter") from Kennebunk Savings Bank ("KSB"), which was hand delivered by Vincent Clough to me at my office in Boston.
7. I read the letter in my office and I relied on the letter in making a decision to continue selling fish to Robert J. Preble & Sons, Inc. ("Preble") and not pursuing collection activity against Preble.
8. Relying on the letter, I accepted orders for fish here in Boston, Massachusetts and I allowed Preble to pick up fish located at our facility in Massachusetts.
9. It would be a hardship for R & P to litigate this matter in Maine. The loss of money in this matter has already resulted in a financial hardship to R & P. Furthermore, our attorneys are not admitted in that state.

Signed under the penalties of perjury this 26 day of May, 2005

Michael Scola

STATE OF MASSACHUSETTS SUFFOLK, SS

Personally appeared the above named Michael Scola, who provided a Massachusetts Driver's License as identification and made oath that the above statements are true and accurate and based on his own personal knowledge as of this 26th day of May, 2005.

Notary Public
My commission expires:

MARC KORNITSKY
Notary Public
Commonwealth of Massachusetts
My Commission Expires
September 26, 2008

# EXHIBIT B

**Affidavit of Vincent Clough**

I, Vincent Clough, under oath, do make this affidavit based upon my personal knowledge. I state as follows:

1. My name is Vincent Clough. I reside at 819 Alewive Road, Kennebunk, Maine.

2. I was a fifty percent (50%) shareholder and Vice President of Robert J. Preble & Sons, Inc., a Maine corporation with a principal place of business at Kennebunk, Maine, and a fifty percent (50%) member of Preble Properties, LLC (collectively referred to as "Preble").

3. Preble operated a fish processing facility in Kennebunk, Maine.

4. For several years prior to 2004, Preble maintained its deposit and checking accounts with Kennebunk Savings Bank ("KSB").

5. Preble also had a commercial real estate loan, secured by a real estate mortgage, and a line of credit, secured by substantially all of the assets of Preble, from KSB.

6. During the first half of 2004, Preble suffered significant operating losses.

7. During 2004, KSB required Preble to submit weekly financial statements due to Preble's financial condition.

8. For periods during the calendar year 2004, Preble's accounts payable exceeded its accounts receivable.

9. At the time of filing an amended Voluntary Petition pursuant to 11 U.S.C. Chapter 11 of the United States Bankruptcy Code, Preble had assets of

approximately $600,000.00 and liabilities of approximately $2,900,000.00, as listed on the copy of "Summary of Schedules" attached hereto at Exhibit 1.

10. As the accounts payable to Preble's suppliers increased during 2004, several suppliers terminated or threatened to terminate their relationship and stop selling fish to Preble.

11. Two of the accounts which threatened to stop selling fish, and, had in fact limited the amount of fish they would sell to Preble, and at times stopped selling fish to Preble, were R & P Seafood/Shellfish, Inc. ("R & P") and Four Seas, Inc. ("Four Seas"), both of Massachusetts.

12. In early October 2004, Eric A. Andrews, a Vice President at KSB ("Andrews") wrote the letters dated October 8, 2004 (the "Letters") addressed to the suppliers addresses, which addresses I had provided to Andrews at his request.

13. As I was concerned with maintaining Preble's ongoing business relationship with its suppliers and vendors, I informed Andrews that I would personally deliver the Letters to Preble's suppliers in Maine, New Hampshire, and Massachusetts.

14. I personally delivered the Letters to R & P and Four Seas.

15. During December of 2004, certain of Preble's outstanding checks were returned for insufficient funds. Attached hereto as Exhibit __ is a true copy of Preble's bank statement indicating the removal of the funds from the KSB account.

6. In January 2005, Preble commenced a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Maine.

Signed under the penalties of perjury this 26th day of May, 2005

Vincent Clough

Kennebunk Savings Bank
MEMBER FDIC
104 Main Street, P.O. Box 28
Kennebunk, ME 04043-0028
207-985-4903 or 1-800-339-6573



30
0
. 171

ROBERT J PREBLE & SONS INC
43 OLD ALEWIVE RD
KENNEBUNK ME 04043-6805

BUSINESS ADVANTAGE

ACCOUNT: 66473900

12/01/04 THRU 12/31/04

BUSINESS ADVANTAGE ACCOUNT 66473900

| | | | |
|---|---|---|---|
| | | LAST STATEMENT 11/30/04 | 102,777.88 |
| AVERAGE BALANCE | 70,362.33 | 136 CREDITS | 574,835.95 |
| | | 196 DEBITS | 672,591.90 |
| | | THIS STATEMENT 12/31/04 | 5,021.93 |

DEPOSITS

| REF # | DATE | AMOUNT | REF # | DATE | AMOUNT | REF # | DATE | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| | 12/01 | 210.28 | | 12/13 | 11,988.37 | | 12/21 | 2,116.43 |
| | 12/01 | 318.63 | | 12/13 | 21,978.23 | | 12/21 | 11,484.62 |
| | 12/01 | 4,742.02 | | 12/13 | 43,113.79 | | 12/22 | 3,445.60 |
| | 12/01 | 4,903.21 | | 12/14 | 345.69 | | 12/22 | 13,557.62 |
| | 12/01 | 6,003.71 | | 12/14 | 430.57 | | 12/23 | 6,655.84 |
| | 12/02 | 187.67 | | 12/14 | 862.36 | | 12/23 | 9,404.57 |
| | 12/02 | 4,411.66 | | 12/14 | 1,486.15 | | 12/28 | 49.95 |
| | 12/02 | 5,175.38 | | 12/14 | 16,073.59 | | 12/28 | 259.36 |
| | 12/02 | 19,439.04 | | 12/15 | 6,114.83 | | 12/28 | 665.02 |
| | 12/06 | 346.53 | | 12/15 | 9,224.13 | | 12/28 | 785.68 |
| | 12/06 | 379.76 | | 12/16 | 291.67 | | 12/28 | 800.43 |
| | 12/06 | 2,915.78 | | 12/16 | 346.38 | | 12/28 | 6,141.21 |
| | 12/06 | 3,700.25 | | 12/16 | 5,278.16 | | 12/28 | 15,706.70 |
| | 12/06 | 10,130.50 | | 12/17 | 3,809.85 | | 12/28 | 25,727.97 |
| | 12/06 | 44,148.84 | | 12/17 | 6,029.40 | | 12/29 | 3,160.61 |
| | 12/07 | 1,335.11 | | 12/17 | 9,551.88 | | 12/29 | 6,574.09 |
| | 12/07 | 7,654.71 | | 12/17 | 17,227.90 | | 12/30 | 73.57 |
| | 12/08 | 171.96 | | 12/20 | 1,389.82 | | 12/30 | 108.67 |
| | 12/08 | 219.94 | | 12/20 | 16,473.32 | | 12/30 | 1,033.75 |
| | 12/08 | 443.05 | | 12/20 | 23,034.39 | | 12/30 | 1,990.13 |
| | 12/08 | 444.02 | | 12/21 | 391.19 | | 12/30 | 4,398.04 |
| | 12/08 | 2,568.34 | | 12/21 | 441.23 | | 12/30 | 5,786.46 |
| | 12/08 | 3,984.01 | | 12/21 | 577.59 | | 12/30 | 6,629.93 |
| | 12/08 | 21,919.78 | | 12/21 | 702.10 | | 12/31 | 11.35 |
| | 12/09 | 5,939.11 | | 12/21 | 948.07 | | 12/31 | 3,663.61 |
| | 12/13 | 292.44 | | 12/21 | 1,431.92 | | 12/31 | 10,602.93 |
| | 12/13 | 409.16 | | 12/21 | 1,463.83 | | | |

* * * C O N T I N U E D * * *

Kennebunk Savings Bank
MEMBER FDIC



ROBERT J PREBLE & SONS INC
43 OLD ALEWIVE RD
KENNEBUNK ME 04043-6805

30
0
171

BUSINESS ADVANTAGE
ACCOUNT: 66473900

12/01/04 THRU 12/31/04

## BUSINESS ADVANTAGE ACCOUNT 66473900

### OTHER CREDITS

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| BANKCARD BTOT DEP 520700164010311 | 12/01 | 47.59 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/02 | 31.64 |
| BANKCARD BTOT DEP 520700164010311 | 12/02 | 211.86 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/03 | 32.67 |
| BANKCARD BTOT DEP 520700164010311 | 12/03 | 37.43 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/06 | 30.46 |
| BANKCARD BTOT DEP 520700164010311 | 12/06 | 91.33 |
| BANKCARD BTOT DEP 520700164010311 | 12/06 | 320.34 |
| BANKCARD BTOT DEP 520700164010311 | 12/06 | 485.94 |
| BANKCARD BTOT DEP 520700164010311 | 12/07 | 290.22 |
| ~~AMERICAN EXPRESS SETTLEMENT 2184709178~~ | ~~12/08~~ | ~~73.60~~ |
| BANKCARD BTOT DEP 520700164010311 | 12/08 | 109.17 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/09 | 29.86 |
| BANKCARD BTOT DEP 520700164010311 | 12/09 | 1,498.00 |
| BANKCARD BTOT DEP 520700164010311 | 12/10 | 662.41 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/13 | 54.08 |
| BANKCARD BTOT DEP 520700164010311 | 12/13 | 103.41 |
| BANKCARD BTOT DEP 520700164010311 | 12/13 | 201.97 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/13 | 217.69 |
| BANKCARD BTOT DEP 520700164010311 | 12/13 | 476.88 |
| BANKCARD BTOT DEP 520700164010311 | 12/14 | 1,222.18 |
| BANKCARD BTOT DEP 520700164010311 | 12/15 | 668.30 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/16 | 19.06 |
| BANKCARD BTOT DEP 520700164010311 | 12/16 | 1,732.65 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/17 | 1,708.54 |
| BANKCARD BTOT DEP 520700164010311 | 12/17 | 1,801.47 |
| BANKCARD BTOT DEP 520700164010311 | 12/20 | 243.95 |
| BANKCARD BTOT DEP 520700164010311 | 12/20 | 347.72 |
| BANKCARD BTOT DEP 520700164010311 | 12/20 | 602.75 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/20 | 1,519.86 |
| DISCOVER NETWORK SETTLEMENT 601101005954308 | 12/21 | 8.82 |
| DISCOVER NETWORK SETTLEMENT 601101005954308 | 12/21 | 26.88 |
| BANKCARD BTOT DEP 520700164010311 | 12/21 | 2,989.31 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/22 | 87.10 |
| DISCOVER NETWORK SETTLEMENT 601101005954308 | 12/22 | 212.14 |
| BANKCARD BTOT DEP 520700164010311 | 12/22 | 1,877.49 |
| REVERSAL OF PRINCIPAL PAYMENT TO 20007497 | 12/22 | 24,702.60 |

* * * C O N T I N U E D * * *

30
0
171

ROBERT J PEEBLE & SONS INC
43 OLD ALEWIVE RD
KENNEBUNK ME 04043-6805

BUSINESS ADVANTAGE
ACCOUNT: 66473900

12/01/04 THRU 12/31/04

BUSINESS ADVANTAGE ACCOUNT 66473900

OTHER CREDITS

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| DISCOVER NETWORK SETTLEMENT 601101005954308 | 12/23 | 80.88 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/23 | 324.91 |
| BANKCARD BTOT DEP 520700164010311 | 12/23 | 1,139.36 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/24 | 16.01 |
| DISCOVER NETWORK SETTLEMENT 601101005954308 | 12/24 | 16.19 |
| BANKCARD BTOT DEP 520700164010311 | 12/24 | 1,937.86 |
| BANKCARD BTOT DEP 520700164010311 | 12/27 | 90.76 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/27 | 258.40 |
| BANKCARD BTOT DEP 520700164010311 | 12/27 | 2,610.85 |
| DISCOVER NETWORK SETTLEMENT 601101005954308 | 12/28 | 29.47 |
| BANKCARD BTOT DEP 520700164010311 | 12/28 | 270.70 |
| LOC ADVANCE 20007497 | 12/28 | 13,000.00 |
| BANKCARD BTOT DEP 520700164010311 | 12/29 | 234.67 |
| AMERICAN EXPRESS SETTLEMENT 2184709178 | 12/30 | 20.63 |
| DISCOVER NETWORK SETTLEMENT 601101005954308 | 12/30 | 156.64 |
| BANKCARD BTOT DEP 520700164010311 | 12/30 | 382.13 |
| DISCOVER NETWORK SETTLEMENT 601101005954308 | 12/31 | 146.10 |
| BANKCARD BTOT DEP 520700164010311 | 12/31 | 1,607.58 |
| LOC ADVANCE 20007497 | 12/31 | 13,500.00 |

CHECKS

| CHECK #..DATE | ......AMOUNT | CHECK #..DATE | ......AMOUNT | CHECK #..DATE | ......AMOUNT |
|---|---|---|---|---|---|
| 1907*12/31 | 2,660.85 | 3996*12/02 | 2,090.00 | 4017*12/06 | 8,586.98 |
| 1918*12/31 | 2,795.25 | 4000 12/03 | 15,889.90 | 4019 12/07 | 23.09 |
| 3886*12/03 | 246.00 | 4001*12/01 | 8,347.51 | 4020 12/08 | 9,083.55 |
| 3944*12/02 | 3,315.00 | 4003 12/01 | 3,255.00 | 4021 12/07 | 684.25 |
| 3966*12/24 | 1,728.00 | 4004*12/02 | 1,970.45 | 4022 12/07 | 2,332.00 |
| 3972*12/02 | 2,348.93 | 4008 12/03 | 2,843.00 | 4023 12/07 | 736.13 |
| 3981*12/03 | 828.00 | 4009 12/01 | 778.65 | 4024 12/08 | 5,150.40 |
| 3983 12/02 | 1,491.50 | 4010 12/03 | 459.62 | 4025 12/07 | 140.00 |
| 3984*12/01 | 967.47 | 4011 12/02 | 10,250.23 | 4026 12/09 | 227.64 |
| 3986 12/02 | 1,125.00 | 4012 12/08 | 579.08 | 4027 12/09 | 296.40 |
| 3987*12/08 | 6,734.82 | 4013 12/08 | 550.00 | 4028 12/08 | 80.85 |
| 3989*12/08 | 4,500.00 | 4014 12/03 | 950.00 | 4029 12/08 | 37.28 |
| 3993 12/02 | 10,063.50 | 4015 12/07 | 120.00 | 4030 12/07 | 3,750.00 |
| 3994*12/02 | 998.25 | 4016 12/07 | 10,500.00 | 4031 12/08 | 25.00 |

* * * C O N T I N U E D * * *

Kennebunk Savings Bank
MEMBER FDIC



ROBERT J PREEBLE & SONS INC
43 OLD ALEWIVE RD
KENNEBUNK ME 04043-6805

30
0 BUSINESS ADVANTAGE
171 ACCOUNT: 66473900

12/01/04 THRU 12/31/04

BUSINESS ADVANTAGE ACCOUNT 66473900

CHECKS

| CHECK # | DATE | AMOUNT | CHECK # | DATE | AMOUNT | CHECK # | DATE | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 4032 | 12/08 | 102.22 | 4081* | 12/16 | 773.58 | 4120 | 12/24 | 2,872.28 |
| 4033 | 12/08 | 925.77 | 4083 | 12/16 | 847.70 | 4121 | 12/21 | 24,702.60 |
| 4034 | 12/13 | 6,561.00 | 4084 | 12/20 | 493.00 | 4122 | 12/28 | 110.00 |
| 4035 | 12/07 | 36.00 | 4085 | 12/24 | 7,723.30 | 4123 | 12/22 | 215.24 |
| 4036 | 12/09 | 106.75 | 4086 | 12/20 | 9,940.80 | 4124 | 12/22 | 90.40 |
| 4037 | 12/08 | 1,269.00 | 4087 | 12/15 | 1,266.00 | 4125 | 12/24 | 539.48 |
| 4038 | 12/17 | 94.50 | 4088 | 12/16 | 4,398.70 | 4126 | 12/23 | 1,205.42 |
| 4039 | 12/09 | 83.45 | 4089 | 12/15 | 1,920.80 | 4127 | 12/24 | 80.00 |
| 4040 | 12/08 | 77.40 | 4090 | 12/15 | 120.00 | 4128 | 12/22 | 180.00 |
| ~~4041~~ | ~~12/09~~ | ~~20,700.00~~ | ~~4091~~ | ~~12/17~~ | ~~299.40~~ | ~~4129~~ | ~~12/21~~ | ~~1,704.00~~ |
| 4042 | 12/07 | 394.91 | 4092 | 12/17 | 728.44 | 4130 | 12/21 | 6,295.00 |
| 4043 | 12/08 | 2,928.23 | 4093 | 12/21 | 115.50 | 4131 | 12/21 | 458.44 |
| 4044* | 12/08 | 1,781.00 | 4094 | 12/20 | 1,349.40 | 4132 | 12/22 | 143.09 |
| 4046 | 12/14 | 12,075.42 | 4095 | 12/22 | 878.18 | 4133 | 12/21 | 10,512.98 |
| 4047 | 12/08 | 772.32 | 4096 | 12/23 | 2,339.52 | 4134* | 12/20 | 461.62 |
| 4048 | 12/10 | 8,712.00 | 4097 | 12/17 | 1,384.00 | 4136 | 12/29 | 8,279.90 |
| 4049 | 12/08 | 364.08 | 4098 | 12/17 | 712.60 | 4137 | 12/24 | 322.26 |
| 4050 | 12/17 | 17.00 | 4099* | 12/20 | 1,002.87 | 4138 | 12/28 | 680.00 |
| 4051 | 12/07 | 11.00 | 4101 | 12/22 | 399.50 | 4139 | 12/20 | 1,154.45 |
| 4052 | 12/10 | 687.58 | 4102 | 12/17 | 1,200.00 | 4140 | 12/21 | 4,915.39 |
| 4053 | 12/10 | 904.47 | 4103 | 12/20 | 4,860.00 | 4141 | 12/28 | 2,049.00 |
| 4054 | 12/08 | 10.15 | 4104* | 12/20 | 1,988.00 | 4142 | 12/27 | 2,684.00 |
| 4055 | 12/07 | 191.30 | 4106 | 12/20 | 9,452.00 | 4143 | 12/22 | 14,625.00 |
| 4056 | 12/07 | 1,371.85 | 4107 | 12/24 | 250.00 | 4144 | 12/23 | 2,386.00 |
| 4057 | 12/07 | 13,219.19 | 4108 | 12/21 | 715.58 | 4145 | 12/30 | 1,712.50 |
| 4058 | 12/10 | 1,348.28 | 4109 | 12/21 | 406.83 | 4146 | 12/24 | 2,661.93 |
| 4059 | 12/13 | 40.00 | 4110 | 12/24 | 34.59 | 4147* | 12/24 | 1,945.80 |
| 4060 | 12/10 | 1,918.69 | 4111 | 12/21 | 1,212.54 | 4150* | 12/24 | 5,736.86 |
| 4061* | 12/10 | 1,200.00 | 4112 | 12/23 | 250.00 | 4152 | 12/24 | 832.00 |
| 4063 | 12/10 | 2,992.52 | 4113* | 12/31 | 865.96 | 4153 | 12/29 | 280.00 |
| 4064* | 12/14 | 2,192.30 | 4115 | 12/21 | 453.55 | 4154 | 12/24 | 1,963.93 |
| 4077 | 12/17 | 7,775.00 | 4116 | 12/21 | 165.00 | 4155 | 12/28 | 88.38 |
| 4078 | 12/15 | 2,437.50 | 4117 | 12/22 | 57.75 | 4156 | 12/27 | 5,747.00 |
| 4079 | 12/21 | 474.00 | 4118 | 12/21 | 1,839.14 | 4157 | 12/27 | 4,399.35 |
| 4080 | 12/21 | 1,500.00 | 4119 | 12/24 | 1,470.00 | 4158 | 12/27 | 2,400.00 |

* * * C O N T I N U E D * * *

30
ROBERT J PREBLE & SONS INC 0 BUSINESS ADVANTAGE
43 OLD ALEWIVE RD 171 ACCOUNT: 66473900
KENNEBUNK ME 04043-6805

12/01/04 THRU 12/31/04

BUSINESS ADVANTAGE ACCOUNT 66473900

CHECKS

| CHECK # | DATE | AMOUNT | CHECK # | DATE | AMOUNT | CHECK # | DATE | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| 4159 | 12/29 | 220.00 | 4170 | 12/28 | 531.00 | 4180 | 12/29 | 1,768.00 |
| 4160 | 12/24 | 2,362.00 | 4171 | 12/29 | 385.09 | 4181 | 12/29 | 2,088.00 |
| 4161 | 12/29 | 400.00 | 4172 | 12/29 | 1,328.00 | 4182 | 12/29 | 8,065.00 |
| 4162* | 12/27 | 11,276.25 | 4173 | 12/29 | 2,400.00 | 4183* | 12/30 | 135.00 |
| 4164 | 12/30 | 648.00 | 4174* | 12/31 | 344.00 | 4190 | 12/31 | 162.00 |
| 4165 | 12/28 | 650.00 | 4177 | 12/31 | 1,680.75 | 4191* | 12/31 | 1,386.50 |
| 4166* | 12/28 | 531.00 | 4178 | 12/31 | 183.82 | 4215 | 12/31 | 1,150.00 |
| 4169 | 12/28 | 2,409.35 | 4179 | 12/29 | 594.00 | 4216 | 12/29 | 1,620.00 |

(*) INDICATES A GAP IN CHECK NUMBER SEQUENCE

OTHER DEBITS

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| RETURNED ITEM CHARGE | 12/03 | 5.00 |
| RETURNED DEPOSIT ITEMS | 12/03 | 150.36 |
| DARGIS,BUS & BEG THURS WKLY ROBERT PREBLE | 12/03 | 13,658.29 |
| BANKCARD MTOT DISC 520700164010311 | 12/06 | 181.06 |
| ADP TX/FINCL SVC ADP - TAX PCS9Q 120600A01 | 12/06 | 4,830.00 |
| CHG BACK-NO RESPONSE; 384293; 8/27/04 | 12/07 | 540.02 |
| DARGIS,BUS & BEG THURS WKLY ROBERT PREBLE | 12/10 | 12,577.99 |
| POS PURCHASE FROM CHECKING 12/10 04:21 FAST LANE SERV00200055 SOUTHBORO MA 63789 | 12/13 | 31.50 |
| ADP TX/FINCL SVC ADP - TAX PCS9Q 121300A01 | 12/13 | 4,636.74 |
| PAYMENT TO COMMERCIAL LOAN 20009788 | 12/14 | 934.42 |
| AMERICAN EXPRESS COLLECTION 2184709178 | 12/15 | 4.50 |
| DARGIS,BUS & BEG THURS WKLY ROBERT PREBLE | 12/17 | 12,647.37 |
| PAYMENT TO COMMERCIAL LOAN 20007496 | 12/20 | 1,243.00 |
| ADP TX/FINCL SVC ADP - TAX PCS9Q 122000A01 | 12/20 | 4,580.80 |
| ADP TX/FINCL SVC ADP - TAX PCS9Q 122000A02 | 12/21 | 408.41 |
| DARGIS,BUS & BEG MON WKLY ROBERT PREBLE | 12/21 | 745.19 |
| MISCELLANEOUS DEBIT | 12/21 | 24,742.60 |
| MISCELLANEOUS DEBIT *Sweep of Account Balance* | 12/23 | 113,024.79 |
| POS PURCHASE FROM CHECKING 12/23 04:24 FAST LANE SERV00200055 SOUTHBORO MA 60504 | 12/24 | 36.00 |
| DARGIS,BUS & BEG THURS WKLY ROBERT PREBLE | 12/24 | 12,922.54 |
| ADP TX/FINCL SVC ADP - TAX PCS9Q 122700A01 | 12/27 | 4,858.30 |

* * * C O N T I N U E D * * *

Kennebunk Savings Bank
MEMBER FDIC



ROBERT J PREBLE & SONS INC
43 OLD ALEWIVE RD
KENNEBUNK ME 04043-6805

30
0
171

BUSINESS ADVANTAGE
ACCOUNT: 66473900

12/01/04 THRU 12/31/04

BUSINESS ADVANTAGE ACCOUNT 66473900

OTHER DEBITS

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| RETURNED ITEM CHARGE | 12/30 | 5.00 |
| RETURNED DEPOSIT ITEMS | 12/30 | 426.62 |
| PAYMENT TO COMMERCIAL LOAN 20007497 *Interest on Line* | 12/31 | 2,231.94 |
| DARGIS,BUS & BEG FRI WKLY ROBERT PREBLE | 12/31 | 13,688.71 |

DAILY BALANCE

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 12/01 | 105,654.69 | 12/13 | 109,584.11 | 12/23 | 15,973.97 |
| 12/02 | 101,459.08 | 12/14 | 114,802.51 | 12/24 | 25,536.94- |
| 12/03 | 66,499.01 | 12/15 | 125,060.97 | 12/27 | 53,941.83- |
| 12/06 | 115,450.70 | 12/16 | 126,708.91 | 12/28 | 2,445.93 |
| 12/07 | 90,681.00 | 12/17 | 141,979.64 | 12/29 | 15,012.69- |
| 12/08 | 85,643.72 | 12/20 | 149,065.51 | 12/30 | 2,640.14 |
| 12/09 | 71,696.45 | 12/21 | 90,280.75 | 12/31 | 5,021.93 |
| 12/10 | 42,017.33 | 12/22 | 117,574.14 | | |

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re<br><br>ROBERT J. PREBLE & SONS, INC.,<br>d/b/a Preble Fish Company<br><br>Debtor. | Chapter 11<br>Case No. 05-20111 |
| In re<br><br>PREBLE PROPERTIES, LLC,<br><br>Debtor. | Chapter 11<br>Case No. 05-20112<br>(Jointly administered) |

**AFFIDAVIT OF ROBERT M. BRADWAY**
**IN SUPPORT OF MOTION FOR SALE**

NOW COMES Robert M. Bradway who files this affidavit in support of the motion filed by the above-captioned debtors seeking Court approval to sell certain assets. The affiant, Robert M. Bradway, states as follows:

1. I make all statements in this affidavit based on my own personal knowledge except to the extent I make such statements upon information and belief, in which case I believe such statements to be true. I am a shareholder in both of the above debtors and an officer of both debtors

2. I became familiar with the debtors and their financial circumstances in the beginning of June of last year. The debtors operate a fish-processing plant in Kennebunk, Maine, and restaurants, grocery stores, and other customers located primarily within an approximately 75-mile radius of Kennebunk are served by the debtors. The debtors presently employ approximately 25 employees and the payroll swells to approximately 50 from early summer through fall. Last year, the debtors were faced with significant financial issues. The

primary assets of the debtors comprised the real estate owned by Preble Properties, LLC, ("Properties") and the assets owned by the operating company, Robert J. Preble & Sons, Inc. ("Preble") (collectively, Properties and Preble are referred to as the "Debtors"). Properties primary asset is the building from which it operates in Kennebunk (the "Real Estate"). The Real Estate is set up specifically for fish processing, with built in refrigeration, tanks and other equipment and with all floors built on a slant to drain into floor drains in each room. The principal assets owned by Preble include its accounts receivable and inventory, and its going concern value. The going concern value is based on the customers served by Preble.

3. When I investigated the financial affairs of the Debtors, it became clear to me that substantial matters needed to be addressed for the Debtors to succeed as a going concern. First, the Debtors' expenses would have to be cut considerably. Second, the Debtors needed to improve cash flow by reducing aged receivables and inventory. Third, the Debtors had too much trade debt. It was clear that to address the Debtors' financial issues successfully the Debtors would have to achieve considerable expense reductions and improve cash flow coupled with a refinancing to turn a substantial portion of the trade debt into term debt to be amortized over time. This plan was discussed with the Senior Vice President and loan officer of Kennebunk Savings Bank and a verbal commitment was made to complete the refinancing in the fall of 2004 that would permit the pay-down of the Line of Credit and amortize the trade debt over 10 to 20 years.

4. The Debtors' operations over the summer were hectic and busy, as is the case for businesses driven by tourism. However, the Debtors achieved significant reductions in operating expenses and also successfully reduced aged receivables and inventory as laid out in its plan to improve its performance. The very large operating losses experienced by the Debtors over the

first six months of 2004 were stopped, but with the slow winter season approaching it was time to finalize the refinancing.

5. To our surprise, on December 15, 2004, the long-planned refinancing was rejected. On information and belief, Kennebunk declined to pursue the refinancing further because it could not get the concessions it sought from the U. S. Small Business Administration ("SBA"). Shortly after the refinancing was not approved, Kennebunk informed us that it would not advance any further funds on the Preble line of credit unless Preble remained in formula, which Preble could not do during this historically slow period and having deliberately reduced its inventory and receivables in anticipation of the refinancing. The question then became what was the best way to preserve going concern value for the Debtors.

6. The only alternative that I saw was to shop the Debtors in an effort to sell the Debtors as a going concern.

7. Efforts to shop the Debtors included talking with people in the fish processing trade.

8. The Debtors' primary competitors are based in either Portland, Maine, or Boston, Massachusetts. We found that the people in Portland who might have been interested purchasers of the business were not interested in purchasing the Real Estate also. That is because these Portland-based businesses already have facilities in Portland and have no need to purchase a processing facility in another area. For this reason, our conversations with these Portland-based processors indicated that they substantially discounted the potential value of the Real Estate for use in processing fish. An example that was cited was the vacant Ice Brand processing facility in Portland which is a state-of-the-art plant with reportedly $2,300,000 in sunk costs and

supposedly could be purchased for $40 per square foot. No Portland-based fish processor made an offer to purchase the Debtors' operations.

9. With almost all of the other possible interested parties based in Boston, we talked with some of those businesses. It became apparent that it did not make sense as a business matter for them to purchase the Real Estate and process fish from the Debtors' business location in Kennebunk, Maine, because these competitors already have substantial processing operations in Boston. At best, all but one of the potential interested parties from Boston would be looking to only use the Real Estate, if they purchased it at all, for storage.

10. These factors--which became more apparent as we attempted to solicit interested parties to purchase the Debtors' assets--made it clear to me over time that the value of the Properties' real estate was not nearly as high as a recent appraisal suggested.

11. These attempts to find a purchaser for the Debtors' assets as a going concern did not solicit any offers, though it was an open secret in the industry that the Debtors were looking to sell.

12. If the Debtors do not operate for even a short period of time, the value as a going concern will disappear very quickly. The Debtors' primary business is to serve customers who purchase fresh fish. These customers' orders have to be filled daily. Some of the Debtors' largest customers are grocers and restaurants, and those customers cannot abide any disruption in their fresh fish supply. The processing of fresh fish is the cornerstone of the Debtors' operations and without the fresh fish business there is no way for the Debtors to continue in business, and the going concern value of the Debtors evaporates.

13. If the Debtors cease operations for even one month, the vast majority of their customers will immediately find alternative sources of supply because those customers cannot continue in operations without a constant and reliable supply of fresh processed fish.

14. Based on these factors, on information and belief, if the Debtors' business ceased operations for one or two months there would be no realistic prospect of starting up the business again without a substantial investment of capital because the customers will have already moved on. For the same reasons, if the operations are stopped for one or two months it is most likely that the people currently employed by the Debtors would not have jobs when the Real Estate is sold at foreclosure. The best way to preserve the jobs at stake is to sell the Debtors as a going concern.

15. If Preble's assets are liquidated at foreclosure, the assets that would be liquidated are limited. First, there are accounts receivable valued on the date of the bankruptcy at under $219,000.00. On information and belief, the value of these receivables on liquidation is likely quite a bit less.

16. Second, the inventory valued on the date of the bankruptcy filings was $230,000.00, valued at cost. In liquidation mode, on information and belief, that inventory will be sold for no more than $0.50 on the dollar.

17. The used machinery and equipment owned by Preble has uncertain value. My estimate as to what the personal property could bring at liquidation ranges from $10,000.00 to $30,000.00. Preble's inventory and accounts are subject to a first lien in favor of Kennebunk securing its line of credit which I understand has a present balance of over $283,000, plus attorney fees, costs of collection, and interest and other charges. Preble would on liquidation still owe on the Kennebunk line of credit.

18. The only significant asset owned by Properties is the Real Estate. Terms debts to Kennebunk totaling over $523,000, plus attorney fees, costs of collection and interest and other charges are secured by a first priority lien on the Real Estate. SBA is owed approximately $362,755.37 secured by a junior lien on the Real Estate. On liquidation, SBA is only a secured creditor if the Real Estate is sold at foreclosure for a net of more than at least $550,000.

19. If the Real Estate is sold at foreclosure, based on my knowledge of the Real Estate and the market, I do not think that the Real Estate will bring enough to entitle the SBA to any payment. If the Real Estate is sold to someone for uses other than a fish-processing facility, then all of the used refrigeration equipment would have to be taken out which would depress the price that anyone would pay for the building. Furthermore, the building is set up for a water-intensive use, and if someone tried to use the building for other commercial uses, the buyer would incur costs to reconfigure the building, including the costs to level all of the floors which each slope to floor drains. While it is possible that if the Real Estate is sold at auction a buyer would propose to use it to process fish, the price to be paid would depend on that prospective buyer having a sufficient market to justify running a fish-processing facility at the Real Estate, since the going concern value (the customers) would have gone elsewhere. On information and belief, this would depress the price anyone would be willing to pay for the Real Estate.

20. On liquidation, based on the factors discussed above, the SBA would not receive any payment.

21. The proposed buyer values the Real Estate at slightly less than $475,000.00 based on its allocation of its purchase price. The buyer was the only party who ultimately made and offer, and its offer is the best evidence that exists right now as to the true value of the Debtors' assets as a going concern. Under the proposed deal, the SBA would get nothing. The only

possibility for the SBA to ultimately receive any payment would be if another bidder was attracted to the sale process who was willing to pay substantially more that the proposed buyer. On information and belief, the only way that would happen is if the Debtors were continuing to operate as a going concern. The only way that this can happen is if the Debtors are able to operate which will require the bankruptcy court to approve post-petition financing.

Dated: February 3, 2005.

/s/ Robert M. Bradway
Robert M. Bradway

ROBERT J. PREBLE & SONS, INC.
d/b/a Preble Fish Company, and
PREBLE PROPERTIES, LLC

STATE OF MAINE,
COUNTY OF York, ss.

Personally appeared before me the above named, ROBERT M. BRADWAY, being duly sworn upon oath, and acknowledged the foregoing instrument to be true, this 3rd day of February, 2005.

Robyn A. Stackhouse
[Print name]
My commission expires: ______________

ROBYN A. STACKHOUSE
NOTARY PUBLIC, MAINE
MY COMMISSION EXPIRES SEPTEMBER 24, 2008

P:\BANKR\36349\DOC\SALE-AFFIDAVIT 2.3.05-A.DOC

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSASCHUSETTS

R & P SEAFOOD/SHELLFISH, INC., and,
FOUR SEAS, INC.
Plaintiffs,

v.

CIVIL ACTION NO. 05-cv-10420-MLW

KENNEBUNK SAVINGS BANK,
Defendant.

**Affidavit of Donald Lundin**

I, Donald Lundin, under oath, do make this affidavit based upon my personal knowledge. I state as follows:

1. My name is Donald Lundin. I am the President of Four Seas, Inc. ("Four Seas"), a Massachusetts corporation with a principal address of 8 Seafood Way, Unit 8, Boston, Massachusetts.
2. Four Seas engages in the purchase and sale of fresh fish from a leased facility in Boston.
3. Four Seas had approximately $11,500,000 in sales for fiscal year 2004, which ended December 31, 2004. Four Seas currently has 8 employees.
4. I reviewed the Complaint filed in this matter and I believe that all factual matters to which I have knowledge, as contained in that document, to be true, to the best of my knowledge and belief.

5. I received the October 8, 2004 letter ("the letter") from Kennebunk Savings Bank ("KSB"), which was left at my office in Boston. Vincent Clough informed me that he had left the letter there for me at my office.

6. I read the letter in my office and I relied on the letter in making a decision to continue selling fish to Preble Seafood ("Preble") and not pursuing collection activity against Preble.

7. Relying on the letter, I accepted orders for fish here in Boston, Massachusetts and I allowed Preble to pick up fish located at our facility in Massachusetts.

8. It would be a hardship for Four Seas to litigate this matter in Maine. The loss of money in this matter has already resulted in a financial hardship to Four Seas. Furthermore, our attorneys are not admitted in that state.

Signed under the penalties of perjury this 26 day of May, 2005

Donald C Lundin
Donald Lundin

# EXHIBIT E

Form B6
(6/90)

# United States Bankruptcy Court
## District of Maine

In re **Robert J. Preble & Sons, Inc.**

Case No. **05-20111**
Chapter **11**

# SUMMARY OF SCHEDULES

AMOUNTS SCHEDULED

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | YES | 1 | $ 0.00 | | |
| B - Personal Property | YES | 3 | $ 609,354.28 | | |
| C - Property Claimed as Exempt | NO | | | | |
| D - Creditors Holding Secured Claims | YES | 1 | | $ 339,962.19 | |
| E - Creditors Holding Unsecured Priority Claims | YES | 2 | | $ 4.20 | |
| F - Creditors Holding Unsecured Nonpriority Claims | YES | 24 | | $ 2,609,831.27 | |
| G - Executory Contracts and Unexpired Leases | YES | 1 | | | |
| H - Codebtors | YES | 1 | | | |
| I - Current Income of Individual Debtor(s) | NO | 0 | | | $ |
| J - Current Expenditures of Individual Debtor(s) | NO | 0 | | | $ |
| Total Number of sheets in ALL Schedules ➢ | | 33 | | | |
| | | Total Assets ➢ | $ 609,354.28 | | |
| | | | Total Liabilities ➢ | $ 2,949,797.66 | |

EXHIBIT F

EXHIBIT III

# MAINE
# STATE CHARTERED
# SAVINGS BANKS

| | 06/30/04 $ in (000's) Assets | Deposits | Loans |
|---|---|---|---|
| Steven A. Closson, President<br>**ANDROSCOGGIN SAVINGS BANK**<br>30 Lisbon St., PO Box 1407<br>Lewiston, ME 04240 | 482,531 | 315,027 | 330,179 |
| P. James Dowe, Jr., President<br>**BANGOR SAVINGS BANK**<br>3 State St., PO Box 930<br>Bangor, ME 04402-0930 | 1,795,303 | 1,273,135 | 1,373,614 |
| Glen Hutchinson, President<br>**BATH SAVINGS INSTITUTION**<br>105 Front St., PO Box 548<br>Bath, ME 04530-0548 | 350,206 | 274,746 | 238,778 |
| Wayne Sherman, President<br>**BIDDEFORD SAVINGS BANK**<br>254 Main St., PO Box 525<br>Biddeford, ME 04005-0525 | 224,136 | 169,448 | 155,634 |
| Gary M. Downs, President<br>**FRANKLIN SAVINGS BANK**<br>197 Main St., PO Box 825<br>Farmington, ME 04938-0825 | 288,948 | 216,819 | 218,843 |
| Christopher Emmons, President<br>**GORHAM SAVINGS BANK**<br>10 Wentworth Dr., PO Box 39<br>Gorham, ME 04038 | 575,975 | 338,232 | 397,083 |
| Mark L. Johnston, President<br>**KENNEBEC SAVINGS BANK**<br>150 State St., PO Box 50<br>Augusta, ME 04330 | 490,183 | 352,919 | 379,330 |
| Joel Stevens, President<br>**KENNEBUNK SAVINGS BANK**<br>104 Main St., P.O. Box 28<br>Kennebunk, ME 04043-0028 | 613,818 | 533,200 | 509,236 |
| Edward L. Hennessey, Jr., President<br>**MACHIAS SAVINGS BANK**<br>4 Center St., PO Box 318<br>Machias, ME 04654-0318 | 461,782 | 338,509 | 395,586 |
| Sherwood Moody, President<br>**MECHANICS' SAVINGS BANK**<br>100 Minot Ave., PO Box 400<br>Auburn, ME 04210 | 214,458 | 176,451 | 184,757 |

EXHIBIT III

# MAINE
# STATE CHARTERED
# SAVINGS BANKS

| | 06/30/04 $ in (000's) Assets | Deposits | Loans |
|---|---|---|---|
| Robert Harmon, President<br>**NORWAY SAVINGS BANK**<br>261 Main St., PO Box 347<br>Norway, ME 04268 | 655,445 | 515,088 | 505,749 |
| Kevin P. Savage, President<br>**SACO AND BIDDEFORD SAVINGS INSTITUTION**<br>252 Main St., PO Box 557<br>Saco, ME 04073 | 555,490 | 385,241 | 388,551 |
| Rodney Normand, President<br>**SANFORD INSTITUTION FOR SAVINGS**<br>900 Main St., PO Box 472<br>Sanford, ME 04073 | 334,798 | 202,660 | 241,180 |
| Virginia Howard, President<br>**SKOWHEGAN SAVINGS BANK**<br>13 Elm St., PO Box 250<br>Skowhegan, ME 04976 | 386,009 | 300,680 | 274,353 |
| Jeffrey D. Smith, President<br>**UNITEDKINGFIELD BANK**<br>145 Exchange St.<br>Bangor, ME 04401 | 422,404 | 286,784 | 302,390 |
| **TOTAL: 15** | **7,851,486** | **5,678,939** | **5,895,263** |

EXHIBIT G







**Start:** **104 Main St**
Kennebunk, ME 04043-7023, US

**End:** **1 Essex Green Dr**
Peabody, MA 01960-2912, US

| Directions | Distance |
|---|---|
| **1:** Start out going SOUTHWEST on MAIN ST/US-1/ME-35/BLUE STAR MEMORIAL HWY/ME-9A toward DANE ST. | <0.1 miles |
| **2:** Turn RIGHT onto FLETCHER ST/ME-35. | 1.8 miles |
| **3:** Turn SLIGHT RIGHT onto ME-35/ALEWIVE RD. | 0.1 miles |
| **4:** Take the I-95 S/MAINE TURNPIKE ramp (Portions toll). | <0.1 miles |
| **5:** Stay STRAIGHT to go onto ramp. | 0.1 miles |
| **6:** Merge onto I-95 S (Portions toll). | 63.8 miles |
| **7:** Take the CENTRE ST. exit- EXIT 48- toward DANVERS. | 0.2 miles |
| **8:** Turn LEFT onto CENTRE ST. | 0.9 miles |
| **9:** CENTRE ST becomes COLLINS ST. | 0.9 miles |
| **10:** Turn RIGHT onto SYLVAN ST. | 0.3 miles |
| **11:** SYLVAN ST becomes PROSPECT ST. | 0.3 miles |
| **12:** Turn LEFT onto ESSEX CENTER DR. | 0.2 miles |

END **13:** End at **1 Essex Green Dr**
Peabody, MA 01960-2912, US

**Total Est. Time: 1 hour, 10 minutes** **Total Est. Distance: 69.16 miles**




**Start:**
**104 Main St**
Kennebunk, ME 04043-7023, US

**End:**
**1 Essex Green Dr**
Peabody, MA 01960-2912, US




**Notes:**

NAVTEQ ON BOARD

All rights reserved. Use Subject to License/Copyright

These directions are informational only. No representation is made or warranty given

# EXHIBIT H

200501422

FILED

JAN 2 7 2005

SECRETARY OF THE COMMONWEALTH
CORPORATIONS DIVISION

**2004 ANNUAL REPORT**
**OF**
**AMERICAN SEAFOODS PROCESSING LLC**

**A FOREIGN LIMITED LIABILITY CORPORATION**

FEDERAL EMPLOYER IDENTIFICATION NO. 04-3540757

1. Name of the foreign limited liability company.

**American Seafoods Processing LLC**

(a) In jurisdiction of organization: Delaware

(b) If different from (a) above, name under which the foreign limited liability company proposes to do business in Massachusetts: (same as above)

2a. The jurisdiction under which such foreign limited liability company was organized in: Delaware

2b. The date of the organization of the foreign limited liability company is: December 7, 2000

3a. The general character if the business the foreign limited liability company proposed to do in Massachusetts:

To process various seafood products for re-sale; and to transact any and all business for which limited liability companies may be formed under Delaware law and to accomplish any of the forgoing purposes for its own account or as nominee, agent and trustee for others.

3b. If the foreign limited liability company is to render professional service (s) in Massachusetts, each service to be rendered, the name and address of each member or manager who will render a service in Massachusetts are as follows:\

N/A



MCT/145203.1

The foreign limited liability company will abide by and be subject to any conditions or limitations established by any regulating board, including the provisions of liability insurance.

4. The business address of the foreign limited liability company is :

40 Herman Melville Boulevard
New Bedford, MA 02741

5. The name and business, if different from the principal office location, of each manager, if any, is as follows:

| NAME | BUSINESS ADDRESS |
|---|---|
| N/A | N/A |

6. The business address of the foreign limited liability company in Massachusetts, if any : 40 Herman Melville Blvd., New Bedford, MA 02741.

7. The name and business address of the resident agent required to comply with 950 CMR is: CT Corporation System, 101 Federal Street, Suite 300, Street, Boston, MA 02109

8. If the foreign limited liability company has a specific date of dissolution, the latest date on which the limited liability company is to dissolve: N/A

9. The name of one or more persons, if desired, authorized to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property, whether to be recorded in the registry of deeds or a district office of the land court: N/A

DATED: January 24, 2005

American Seafoods Processing LLC
(Name of Foreign Limited Liability Co.)

By: ______________________________
John Cummings, Authorized Person

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF BRISTOL

The foregoing instrument was acknowledged before me this 24 day of January, 2005.

______________________________
Notary Public:
My Commission Expires:

Pauline Tetreault
Notary Public
My Commission Expires
March 12, 2010



MCT/145208.1

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

R & P SEAFOOD/SHELLFISH, INC., and,
FOUR SEAS, INC.
Plaintiffs,

v.

CIVIL ACTION NO. 05-cv-10420-MLW

KENNEBUNK SAVINGS BANK,

Defendant.

**Affidavit of Marc D. Kornitsky, Esq.**

I, Marc D. Kornitsky, under oath, do make this affidavit based upon my personal knowledge. I state as follows:

1. My name is Marc D. Kornitsky. I am an attorney in good standing and a member of the Massachusetts bar. I maintain an office at Antico, Barrett, Burke & Kornitsky LLP, One Essex Green Drive, Peabody, Massachusetts.
2. I represent the plaintiffs, Four Seas, Inc. ("Four Seas") and R & P Seafood/Shellfish, Inc. ("R & P") in this action.
3. I attach to the plaintiff's Opposition Memorandum copies of signed Affidavits by Vincent Clough and Donald Lundin.
4. Mr. Clough's attorney forwarded to me a copy of Mr. Clough's Affidavit. I expect to receive the original Affidavit by regular mail.

5. Mr. Lundin also faxed his signed Affidavit to me. I expect to meet with him next week to obtain his signed Affidavit and have it notarized.

6. I attached at Exhibit E to the Opposition a copy of the Bankruptcy Summary of Schedules for the jointly administered "Preble" cases that I personally retrieved from PACER.

7. I also attached at Exhibit F a copy of Exhibit III the Annual Report From the Superintendent of the Bureau of Financial Institutions to the Legislature, (June 15, 2005), which I obtained from a web site, on information and belief, maintained by the state of Maine. The address of the document is http://mainegov-images.informe.org/prf/bkg/2005Legrep.pdf.).

8. I attached at Exhibit G directions I obtained from Mapquest.com, from the defendants address as listed on their web site to my office.

9. I obtained the information at Exhibit H concerning American Seafood Processing LLC from the Massachusetts Secretary of State Office, Corporations Division.

Signed under the penalties of perjury this 26th day of May, 2005

Marc D. Kornitsky

STATE OF MASSACHUSETTS ESSEX, SS

Personally appeared the above named Marc D. Kornitsky, who provided a Massachusetts Driver's License as identification and made oath that the above statements are true and accurate and based on his own personal knowledge as of this 26th day of May, 2005.

ANTHONY PAUL ANTICO
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 5, 2010

Notary Public
My commission expires: 2-5-2010