UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

R&P SEAFOOD/SHELLFISH, INC. &   )
FOUR SEAS, INC.                 )
                                )
    Plaintiffs                  )
                                )
v.                              )   Case No. 05-cv-10420-MLW
                                )
KENNEBUNK SAVINGS BANK,         )
                                )
    Defendant                   )

**DEFENDANT'S MOTION IN LIMINE**
**REGARDING CHOICE OF LAW**

NOW COMES Defendant, Kennebunk Savings Bank, by and through its attorneys, Thompson & Bowie, LLP, and pursuant to the Court's Order Setting Case for Trial dated March 1, 2006, *see* Docket at Entry No. 21, hereby submits its motion in limine regarding choice of law.

### I.   Argument[1]

In cases like this one, where jurisdiction is based upon diversity of citizenship, the court must determine what state's substantive law will be applied to the case. The court applies the choice of law rules of the forum state, in this case, Massachusetts. *See, e.g., Reicher v. Berkshire Life Ins. Co. of Amer.,* 360 F.3d 1, 4 (1st Cir. 2004) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938) and *Klaxton Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 491 (1941); *Spurlin v. Merchants Ins. Co.,* 57 F.3d 9, 10 (1st Cir. 1995); *Putnam Res. v. Pateman,* 958 F.2d 448, 464 (1st Cir. 1992)).

---

[1] For a review of the background facts giving rise to this litigation, see Defendant's prior Motion to Dismiss or for Change of Venue, at pp. 1-4 (Docket Entry No. 4).

**A.      There are Conflicts Between Maine and Massachusetts Law.**

The threshold inquiry in a choice of law analysis is whether an actual conflict of laws exists between the interested jurisdictions—here, Maine and Massachusetts. *Id.* (citing *Millipore Corp. v. Travelers Indem. Co.,* 115 F.3d 21, 29 (1st Cir. 1997)).  An actual conflict does exist in this matter.

Plaintiffs have asserted four general tort claims against KSB (Counts I-IV: intentional and negligent misrepresentation, unjust enrichment, and breach of covenant of good faith and fair dealing) and a Massachusetts statutory claim under 93A (Count V). *See* Complaint (Docket Entry No. 1), *passim.*  In addition to the differences between Maine and Massachusetts law with regard to each of the asserted claims, a more general overarching conflict of law exists:  the named Defendant, KSB, is not an ordinary citizen of another state.  Rather, it is a <u>regulated</u> <u>entity</u>, whose conduct is defined by Maine and federal law.

Plaintiffs' basic premise woven through all of the claims asserted is that the Bank had a duty to disclose information to them, different from or beyond the information in the October 2004 letter.  Yet, Maine banking law is different from federal and Massachusetts law with regard to the disclosure of financial information.  Maine does not limit its non-disclosure rules to <u>consumer</u> financial information.  Rather, Maine law specifically prohibits disclosure of financial information with regard to <u>commercial</u> customers.  *See* Maine Bureau of Banking Bulletin #71, July 9, 2001 ("Finally, institutions should be aware that Title 9-B chapter 16 also prohibits the disclosure of financial records held for commercial customers except under certain circumstances and exceptions.") (www.state.me.us/pfr/bkg/bulletins/bull71.htm). That is, Maine does not

permit KSB to divulge the type of information that Plaintiffs claim should have been provided. Recognizing this fundamental distinction is a key to deciding the choice of law issue.

Under Maine law a bank may only disclose financial information about a customer, including a commercial customer: 1) at the customer's direction, 2) in response to legal process, 3) in response to a state request regarding enforcing a child support order, and 4) in response to a proper levy request issued by the Maine Department of Labor. *See* 9-B M.R.S.A. §§ 162-163. Penalties are imposed for violations in the amount of up to $5,000 per violation imposed on the individual bank officer or employee and penalties of up to $10,000 per violation are imposed on the bank itself. *See* 9-B M.R.S.A. § 164(1). Penalties of up to $10,000 per violation are also imposed on any person who induced or attempts to induce disclosure. *See* 9-B M.R.S.A. § 164(2). KSB only divulged the information requested by its customer in accordance with 9-B M.R.S.A. § 162(1).

Maine standards are stricter than federal law. Federal banking regulations do not extend protection from disclosure to commercial customers. Congress enacted the Gramm-Leach-Bliley Act ("GLBA" or "the Act") for the purpose of creating requirements that financial institutions respect the privacy of their customers and to protect the security and confidentiality of those customers' nonpublic personal information. *See* 15 U.S.C. §§ 6801 et seq.[2] However, the definitions of "customer" and "consumer" are specifically limited to natural persons—not business entities. *See, e.g.,* 16 C.F.R. § 313.3(e)(1) ("*Consumer* means an individual who obtains or has obtained a

---

[2] The Federal Financial Modernization Act, also known as the Gramm-Leach-Bliley Act (the "GLBA"), was enacted by Congress and signed into law in November 1999. The FTC issued related regulations at 16 C.F.R. §§ 313.1-18.

3

financial product or service from you that is to be used primarily for personal, family, or household purposes, or that individual's legal representative."); *see also id* at § 313.3(h) ("*Customer* means a consumer who has a customer relationship with you."). Congress did not elect to include commercial credit transactions within the scope of the Act.

Massachusetts law is consistent with the less restrictive federal standard, rather than Maine law. *See, e.g.,* M.G.L. Ch. 167, § 2A (""Consumer transaction", a transaction between a bank and a natural person, in which the money, property or services are primarily for personal, family or household purposes."); M.G.L. 167B, § 1 (""Consumer", a natural person."). Unlike Maine, the Massachusetts Division of Banks does not include <u>commercial</u> credit bank customers in regulations governing disclosure of credit information. *See, e.g.,* 209 C.M.R. § 32.03(1)(a) (exempting credit extended for a business, commercial, or agricultural purpose from disclosure rules); *see also* 209 C.M.R. § 40.02 (Unfair and Deceptive Practices in Consumer Transactions) ("Consumer means a natural person who seeks or acquires goods, services, or money for personal, family, or household use other than for the purchase of real property.").

A Maine bank is required to follow Maine's banking regulations. Any argument that KSB committed a wrongful act must be examined in terms of the requirements of the applicable provisions of Maine law, not Massachusetts law. The assertion of an alleged "duty" running between KSB and Plaintiffs can not stand where the imposition of a purported duty on its face is contrary to the regulations controlling the conduct of Maine banks. Maine law simply would not have allowed the Bank to gratuitously pick and choose supplemental information about Preble Fish and send it off to Plaintiffs. The Bank disclosed the information requested by its commercial customer—Preble Fish—to

4

its customer—Preble Fish. Preble Fish delivered the information to Plaintiffs in the context of <u>Preble's</u> business relationships with the Plaintiffs. KSB's duty was to follow the requirements of Title 9-B chapter 16 of Maine statutory law, which it plainly did.

KSB's interests were to ensure that Preble's debt to KSB was paid and to comply with the confidentiality rules imposed on banks with regard to commercial credit under Maine law. Given these interests, any purported "duty" to undertake any conduct to benefit the non-customer Plaintiffs would be contrary to KSB's interests and obligations.

Given that Maine banking law prevents the finding of a duty of disclosure to Plaintiffs, it is plain that Maine law would not recognize Counts I & II of Plaintiffs' Complaint—the intentional and negligent misrepresentation claims.

In addition to this conflict between Maine and Massachusetts law in light of the lack of any duty, numerous additional distinctions exist with regard to the particular claims pled, too numerous to cover in the 20 pages permitted in this motion. LR, D.Mass. 7.1(B)(4).

For example, Count III asserts an unjust enrichment claim. Under Maine law plaintiffs would need to show: (1) they conferred a benefit on KSB, (2) KSB had appreciation or knowledge of the benefit, and (3) KSB's acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value. *See June Roberts Agency v. Venture Props.,* 676 A.2d 46, 49 (Me. 1996). This is an <u>equitable</u> claim. It does not make sense in the context of regulated entities such as banks. Otherwise, whenever a business filed for bankruptcy any disappointed unsecured creditor would look to banks, arguing that as a secured creditor it had been "unjustly enriched." It was Preble's decision to meet its loan

5

obligations with KSB. Plaintiffs, by choosing to do business with Preble, did not confer a benefit on KSB. Count III would not be sustainable under Maine law. In any event, since it is an equitable claim, the determination of what is equitable is necessarily based on standards in Maine law. Thus, Massachusetts law would not apply.

Likewise, Count IV is problematic for Plaintiffs under Maine law. Maine does not recognize any general covenant of good faith and fair dealing between borrowers and lenders and honesty in fact requirement is strictly limited to the covered activities addressed within the Maine Commercial Code. *See, e.g., Diversified Foods v. First Nat'l Bank,* 605 A.2d 609 (Me. 1992). Thus, under Maine law, there is no indication that Plaintiffs, as third-parties unrelated to the banking relationship, would have any basis to sustain their claim in Count IV for breach of a covenant of good faith and fair dealing.

Count V, the 93A claim, would be unlikely to stand under Maine law, as recognized in a similar circumstance by the First Circuit in *Reicher v. Berkshire Life Ins. Co.,* 360 F.3d 1, 6 (1st Cir. 2004). The *Reicher* Court determined that a Massachusetts Section 93A claim could not stand, since Maryland—the state regulating the applicable insurance policies—had its own regulatory framework governing insurance disputes and duties between the parties. *Id.* Similarly, Maine regulates the duties upon banks, including the duty of nondisclosure with regard to commercial customer financial information. In particular, Maine not only identifies and limits the disclosure of financial records, but provides the means by which financial records may be produced pursuant to Court order (9-B Maine Revised Statutes Annotated § 163) and provides a statutory scheme for assessing violations of Maine laws regarding financial disclosures. *See* 9-B Maine Revised Statutes Annotated § 164. A Section 93A claim could not stand on the facts

6

asserted in this litigation, in light of Maine's nondisclosure rules imposed on Maine banks.

Moreover, note that Maine courts have long held that as a creditor a bank owes no special fiduciary duties toward its debtors (let alone third-parties unrelated to the banking relationship). *See, e.g., Brae Asset Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995); *First N.H. Banks Granite State v. Scarborough*, 615 A.2d 248, 250 (Me. 1992); *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 615 (Me. 1992).

Application of such principles as defined by Maine law would be germane to Plaintiffs claim that they were owed duties, given that they were a step removed from the banker-creditor relationship. Simply put, given that KSB was not a party to any transaction with Plaintiffs, it is extremely unlikely they could sustain any duty of disclosure of any kind. Applying Maine law, it would be likely that no duty to disclose could be sustained, however framed. *Cf., e.g., Ray Larsen Assocs., Inc. v. Nikko Am. Inc.,* 1996 U.S. Dist. LEXIS 11163 at *5 (S.D.N.Y. Aug. 6, 1996) ("[a] review of the cases which recognize a duty to disclose due to one party's superior knowledge reveals that the duty ordinarily arises only in the context of business negotiations where parties are entering a contract." (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 155 (2d Cir. 1995) (explaining that the duty arises "in business negotiations"); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 123 (2d Cir. 1984)). No such circumstance is present in this case. KSB did not engage in any business relationship with Plaintiffs.

In light of these factors, Maine law must govern any claims asserted against KSB. This is also consistent with the functional choice of law approach applied by Massachusetts courts to choice of law analyses.

**B.     Under the Functional Choice of Law Standard, Maine Law Applies.**

As the First Circuit explained in *Reicher,* Massachusetts applies a functional choice of law approach to choice of law questions that "responds to the interests of the parties, the States involved, and the interstate system as a whole." *Reicher v. Berkshire Life Ins. Co. of Amer.,* 360 F.3d 1, 5 (1st Cir. 2004) (quoting *Bushkin Assocs., Inc. v. Raytheon Co.,* 393 Mass. 622, 473 N.E.2d 662, 668 (Mass. 1985) and citing *Cosme v. Whitin Mach. Works, Inc.,* 417 Mass. 643, 632 N.E.2d 832, 834 (1994); *Millipore Corp. v. Travelers Indem. Co.,* 115 F.3d 21, 30 (1st Cir. 1997)). In conducting the analysis Massachusetts courts can consider many types of factors including:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Reicher,* 360 F.3d at 5 (quoting *Bushkin Assocs.,* 473 N.E.2d at 669 (quoting *Restatement (Second) Conflict of Laws,* § 6 (1971)). Moreover, as the First Circuit explained further, Massachusetts courts "also may take into account five parallel considerations:

> (A) Predictability of results; (B) Maintenance of interstate and international order; (C) Simplification of the judicial task; (D) Advancement of the forum's governmental interests; [and] (E) Application of the better rule of law.

8

> *Id.* (quoting R.A. Leflar, American Conflicts Law, § 109 (3d ed. 1977)). Moreover, the Massachusetts Supreme Judicial Court has stated that it "feels free. . .to borrow from any of the various lists to help focus. . .attention on the considerations particularly relevant to the case." *Milllipore,* 115 F.3d at 30 (quoting *Bushkin Assocs.,* 473 N.E.2d at 670. See generally *Seney v. Prudential Prop. & Cas. Ins. Co.,* 8 Mass. L.Rep. 179, No. Civ.. A. 94-02864A, 1997 WL 83502, at *3-*5 (Mass. Super. Ct. Dec. 23, 1997) (applying Massachusetts functional approach to choice of law issue in the context of statute of limitations).

*Reicher,* 360 F.3d at 5.

Basically, for practical purposes, these considerations essentially mean that Massachusetts courts look to the totality of the circumstances to determine which forum makes sense, based on the particular considerations of the given case. However, the plainest statement of the applicable standard was recently stated by this Court as follows: "Massachusetts courts apply the substantive law of the state which has the more significant relationship to the transaction in litigation." *See Dean v. Raytheon Corp.,* 399 F.Supp.2d 27, 31 (D.Mass. Nov. 16, 2005) (emphasis added) (discussing and citing authorities). Undoubtedly here, Maine is the forum that has the most significant relationship to this matter for numerous reasons.

It is critical to remember that Plaintiffs R&P and Four Seas specifically chose to do business with Preble, a company located in Maine. *See* Plaintiff's Complaint at ¶10 (Docket Entry No. 1). The Bank made no similar choice to engage in a business relationship of any kind with Plaintiffs. There was no business relationship between Plaintiffs and KSB. The Bank was merely a repository of information about Preble. Suing the Bank is like suing a library. Preble decided to provide information to Plaintiffs, not the Bank. Preble delivered the information to Plaintiffs, not the Bank.

9

There is no evidence that the Bank undertook any activity intending to subject itself to suit under the laws of the Commonwealth of Massachusetts. It simply responded to its customer's request within the parameters of Maine law.

As highlighted above, Maine regulatory standards governing the conduct of banks regarding commercial customers are different from Massachusetts standards. It makes no sense to expect a bank located exclusively in Maine who provided letters to its Maine commercial customer to anticipate that it would be subject to laws of other states such as Massachusetts. Maine has the greatest interest in this litigation, as KSB explained in its previous motion to dismiss for lack of jurisdiction or for change of venue and as addressed further below. *See* Docket at Entry No. 4, at pp. 6-13 & 15-17.

### C.     Applying the *Bushkin* factors, Maine law controls this case.

Application of the standards articulated by the Massachusetts Supreme Judicial Court in *Bushkin Associates, supra* demonstrate that Maine law ought to be applied to this case. The first *Bushkin* factor, the needs of the interstate and international systems, do not militate for either Massachusetts or Maine except as is more fully analyzed in the factors analyzed below. The second *Bushkin* factor, the relevant policies of the forum (Massachusetts) is of limited import. While Massachusetts has an interest in providing a forum to its residents, and also has an interest in regulating commercial conduct under § 93-A, Massachusetts has no direct involvement in the specific business relationships at issue here. The Massachusetts Plaintiffs are simply vendors sending and shipping to Maine, where its customer has a relationship with the bank which is a Defendant in this case. Massachusetts has no involvement whatsoever with the banking relationship that

10

gives rise to this case and has no strong policy interest in regulating the relationship between a Maine bank and its customer.

The third *Bushkin* factor, the relevant policies of other interested states and the relative interest of those states and the determination of the particular interest are paramount in this matter. Ultimately this case turns on the relationship between Kennebunk Savings Bank and its customer, Preble. What a Maine bank may, and may not do, with regard to the disclosure of financial records of its customer is a closely regulated aspect of Maine banking law. Moreover, Maine has made clear that financial institutions operating in Maine are to be closely supervised by the Bureau of Financial Institutions. *See* 9-B M.R.S.A. § 111, which states as follows:

> By enactment of this Title, it is declared to be the policy of the State that the business of all financial institutions must be supervised by the Bureau of Financial Institutions in a manner to ensure the strength, stability and efficiency of all financial institutions; to ensure reasonable and orderly competition, thereby encouraging the development and expansion of financial services advantageous to the public welfare; and to maintain close cooperation with other supervisory authorities.
>
> In addition, with respect to the Bureau of Financial Institutions' authority pursuant to Tile 9-A, section 1-301, subsection 2, all financial institutions must be supervised in such a way as to protect consumers against unfair practices by financial institutions that provide consumer credit, to provide consumer education and to encourage the development of economically sound credit practices.

Included within these broad supervisory provisions is a specific provision dealing with disclosure of financial information (9-B M.R.S.A. §§ 161 and 162) and an express provision providing for civil enforcement of violations by financial institutions of the

laws relating to confidential financial records. (9-B M.R.S.A. § 164). Thus, Maine has a strong and direct interest in regulating the activities of Kennebunk Savings Bank and it relates to the dissemination of confidential financial information with regard to a Maine-based customer.

The fourth *Bushkin* factor, the protection of justified expectations, also clearly militates for application of Maine law. In this case, Kennebunk Savings Bank should be able to justifiably rely upon compliance with Maine law in order to protect it from liability as it interacts with its customer and its customer's business relationships. To subject Kennebunk Savings Bank to other and differing standards which conflict with Kennebunk Savings Bank's obligations to its customer is inappropriate.

The fifth *Bushkin* factor, the basic policies underlying the particular field of law, also militate for application of Maine law with regard to this issue. In our federal system the regulation of financial institutions located within each state is confided to the sound authority of the home state. Further, Maine's regulation of its financial institutions is in fact more stringent then the laws of a number of other jurisdictions. Accordingly, public policy would appear to favor Maine's more stringent regulation of financial institutions, and certainly would not be offended by giving precedence to a more rigorous regulation of the bank/customer relationship as is found in Maine's confidential financial information laws.

The sixth *Bushkin* factor, certainty, predictability, and uniformity of result, clearly requires application of Maine law to this case. A review of Clough Deposition Exhibit 7, which sets forth the 16 customers to whom Preble requested that the Bank provide information as to the status of Preble's banking relationship, demonstrates that eight of

12

the customers were located in Maine, four in Massachusetts, two in New Hampshire, one in Pennsylvania, and one in New Brunswick, Canada. *See* Exhibit A attached hereto, Deposition of Vincent Clough at Deposition Exhibit 7. Subjecting the Bank to potentially five different jurisdiction's rules would provide the Bank with no certainty as to what it should or should not do, would result in the Bank having no predictability as to the results of its actions, and, in fact, suggest that the Bank would be faced with a variety of differing results based on differing rules. Accordingly, application of law other than Maine could well result in a non-uniform analysis of the Bank's conduct. Accordingly, the sixth *Buskin* factor clearly militates in favor of the application of Maine law.

Lastly, the seventh *Bushkin* factor, ease and the determination and application of the law to be applied, there would be no interference with Maine's appropriate regulation of the relationship between its financial institutions and their customers, and it would not subject the Bank to arguably inconsistent liability under varying state laws. The ease of simply applying Maine banking law to a single transaction in which a Maine bank provided letters to its Maine customer provides for the greatest ease in the determination and application of the law to be applied.

The First Circuit in *Reicher* noted a variety of parallel considerations which assist in the determination of the appropriate law to apply in a given case. These parallel considerations, consisting of predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interest and application of the better rule of law, all also similarly militate for the application of Maine's well-defined and stringent financial institution regulatory procedures to this case.

13

    **D.**     **Application of Maine law is consistent with the First Circuit's conflict of law analysis in *Reicher*.**

This case is strikingly similar to the conflicts of law analysis that the First Circuit engaged in *Reicher*. In *Reicher,* Plaintiffs in a Massachusetts forum were attempting to apply Massachusetts law, including a Chapter 93-A claim, to an insurance policy issued by a Massachusetts company, but distributed to insureds in Maryland. Maryland, like Maine, had a comprehensive statutorily-based regulatory policy which it applied to insurance policies of the type at issue in the case. Maryland, like Maine in this case, had a statute which explicitly represented the public policies of protecting insurance consumers from the application of out-of-state laws and promoting a uniform predicable system of adjudication of disputes from Maryland citizens, just as Maine's banking regulations provide for a definition of the obligations of a Maine bank to its customers and a provision for an enforcement mechanism if those regulations are violated. In *Reicher* the First Circuit found that the justified expectations of Maryland insureds and insurers as well as the ease of determining which states' laws apply to Maryland insurance policies were supported by the application of Maryland law. *Reicher,* 390 F.3d at 5-7. In this case, similarly, the justified expectations of a Maine bank and its customer and the ease of applying Maine banking law to transactions involving a Maine bank and its customer support the application of Maine law. Just as in *Reicher* Maryland law was applied to an insurance contract and the Chapter 93-A claim was dismissed, in this case this court should apply Maine law to this relationship involving a Maine bank and its customer and should similarly dismiss all claims based upon Massachusetts law, including the Chapter 93-A claim.

## **CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests that this Motion in *Limine* be granted and that the Court enter an order directing that Maine law apply to this action.

Dated at Portland, Maine this 1st day of May, 2006.

/s/ Lisa F. Bendetson

Lisa F. Bendetson, Esq. (BBO#567069)

/s/ James M. Bowie

James M. Bowie, Esq.
Attorneys for Defendant, Kennebunk Savings Bank

**CERTIFICATE OF SERVICE**

      I, James M. Bowie/Lisa F. Bendetson, attorney for Defendant, Kennebunk Savings Bank, hereby certify that I made service of the foregoing document titled: "Defendant's Motion in Limine Regarding Choice of Law" with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following: Marc D. Kornitsky, Esq., and I hereby certify that on this date I did not mail by the United States Postal Service, said submission to non-registered participants as there are no non-registered participants for this case.

      Dated at Portland, Maine, this 1st day of May, 2006.

/s/ Lisa F. Bendetson

Lisa F. Bendetson, Esq. (BBO#567069)

/s/ James M. Bowie

James M. Bowie, Esq.
Attorneys for Defendant, Kennebunk Savings Bank

**THOMPSON & BOWIE, LLP**
Three Canal Plaza
P.O. Box 4630
Portland, ME  04112
(207) 774-2500

Eric Andrews

**From:** Brad [brad@preblefish.com]
**Sent:** Wednesday, October 06, 2004 4:12 PM
**To:** Eric Andrews
**Subject:** Letters of reference and credit worthiness



VENDOR
)DRESSES.xls (15 K

Eric,

Thank you for your offer to write letters to the some of our key vendors who are currently feeling the impact of our AP squeeze. Attached is a list of vendors to whom it would be very helpful to have letters written. The plan is for Vinnie to hand-carry the appropriate letter to each vendor and ensure them of our intent and ability to pay using both your letter and our personal assurance.

Please do not hesitate to contact me if you have any questions.

Thanks,
Brad

VENDOR ADDRESSES

AMERICAN SEAFOODS
P.O. BOX 8500-53253
PHILADELPHIA, PA  19178-3253

COZY HARBOR
P.O. BOX 389
PORTLAND, ME  04112

FOUR SEA'S INC.
UNIT 8 SEAFOOD WAY
BOSTON, MA  02210

J P'S SHELLFISH
BOX 666
ELIOT, ME  03903

KLENDA SEAFOODS
167 RUMERY STREET
SO. PORTLAND, ME  04106

MILLS SEAFOOD
5 MILLS STREET
BOUTOUCHE  NB  E4S3S3
CANADA

JOHN NAGLE CO.
306 NORTHERN AVE.
BOSTON, MA  02210

ORION SEAFOOD INTL. INC.
P.O. BOX 779
PORTSMOUTH, NH  03802

PACK EDGE INC.
55 WASHINGTON AVE.
PORTLAND, ME  04101

PORTLAND SHELLFISH INC.
110 DARTMOUTH STREET
SO. PORTLAND, ME  04106

R & P SHELLFISH
8 SEAFOOD WAY UNIT 5-6
BOSTON, MA  02210

SEATRADE
105 BARTLETT STREET
PORTSMOUTH, NH  03801

SLADE GORTON & CO INC.
225 SOUTH HAMPTON STREET
BOSTON, MA  02118-2724

SPINNEY CREEK SHELLFISH
P.O. BOX 310
ELIOT, ME  03903

NOVA
P.O. BOX 350
PORTLAND, ME  04112

CUMMINGS LOBSTER CO.
5 ALEWIVE PARK ROAD
KENNEBUNK, ME  04043-6134