# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| R&P SEAFOOD/SHELLFISH, INC. & | ) | |
| FOUR SEAS, INC. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. 05-cv-10420-MLW |
| | ) | |
| KENNEBUNK SAVINGS BANK, | ) | |
| | ) | |
| Defendant | ) | |

## JOINT PRETRIAL MEMORANDUM

NOW COME the parties, by and through their counsel, and pursuant to the Court's Order setting case for trial dated March 1, 2006, hereby provides this joint pretrial memorandum as follows.

## I.      SUMMARY OF EVIDENCE

In brief, a general overview of the evidence the parties anticipate developing at trial is as follows:

### A.      Plaintiffs' Statement

### 1.      General Background & Discussion Regarding Liability.

This action is founded on the letters dated October 8, 2004 (the "letters") addressed to the plaintiffs' Boston addresses (copies attached to plaintiffs' Complaint). Plaintiffs allege that Kennebunk Savings Bank ("KSB" or "the Bank") intentionally or negligently misrepresented the creditworthiness of its customer (Preble Seafood) to the plaintiffs in the letters. Plaintiffs further allege that the Bank's conduct was unfair and deceptive and violated M.G.L. c. 93A, and was willful or knowing. Plaintiffs claim that when the Bank chose to speak as to the customer's creditworthiness, it was required to do

so accurately and completely. The Bank did not do so, and further failed to subsequently

correct the inaccuracies.

Plaintiff, R & P, relied on representations made by the Bank to Seafax (a credit

reporting service) earlier than the date of the Letters.

### 2.    Damages.

The plaintiffs allege damages as follows:

R & P: approximately $80,000 and expected preferential payment to the

Bankruptcy Trustee of $25,000.

Four Seas: approximately $60,000 and expected preferential payment to the

Bankruptcy Trustee of $10,000.

The alleged damages were as a result of sales to Preble in reliance on the letters

and the failure to collect outstanding balances due from Preble in reliance on the letters.

Plaintiffs further allege damages for attorney's fees in pursuing this 93A action.

### B.    Defendant's Statement

### 1.    General Background & Discussion Regarding Liability.

This litigation is advanced by two wholesale seafood distributors located in

Massachusetts—R&P and Four Seas. Robert J. Preble & Sons or "Preble Fish" was a

customer of R&P and Four Seas. Preble is a Maine business. Preble bought wholesale

seafood product from R&P and Four Seas and sold it to its customers in Maine. Preble is

no longer in business—the federal bankruptcy court in Maine approved the sale of Preble

in 2005. The bankruptcy case is ongoing. Unsecured creditors such as R&P and Four

Seas were owed money by Preble at the time of Preble's bankruptcy filing. R&P and

Four Seas have not recouped their losses through the bankruptcy proceedings. They are

advancing their claims against the Bank in this litigation to attempt to recover monies they were owed by Preble. The Bank never had a business relationship of any kind with R&P or Four Seas. The Bank's relationship was with Preble, its customer.

Preble experienced cash flow problems in 2004. On or about October 8, 2004, the Bank issued letters directed to businesses in the seafood industry who dealt with Preble, commenting upon the status of the Preble account, in response to Preble's request. The correspondence was printed on Bank letterhead and stated:

> Re: Robert J. Preble & Sons
>
> To Whom It May Concern:
>
> Robert J. Preble & Sons located in Kennebunk, Maine has been our customer since October 2000. Recent deposit balances are in the moderate six-figure range. A lending relationship exists within the medium six-figure range. A line of credit commitment exists within the medium six-figure range with a moderate six-figure range currently outstanding. All accounts are handled in a satisfactory manner. The bank is presently considering a refinancing package for the company which contemplates resolution in November 2004.
>
> If I can be of any further service, please feel free to contact me at (207) 985-4903.
>
> Sincerely,
>
> /s/
>
> Eric A. Andrews
> Vice President

Identical letters were re-printed and addressed directly to multiple businesses at the request of the Bank's customer, Preble Fish. The letters were not actually mailed out to

the businesses by the Bank.  Vinny Clough of Preble came to the Bank and picked up the letters and hand-delivered them to R&P and Four Seas.

At a meeting on December 14, 2004 the SBA/CEI refused to refinance its loans with Preble.  Since this necessary party failed to go along with the refinancing plan, the Bank did not ultimately refinance its loans with Preble.  Thereafter, Preble filed for bankruptcy.

Until the December 14, 2004 meeting the bank expected that the refinancing package would be approved.  The evidence reflects that the Bank was treating Preble as a satisfactory customer:  the amounts being borrowed were being paid down regularly; the Bank was looking to continue dealing with Preble and refinance Preble's existing debt; and the Bank extended an additional $100,000 worth of credit to the borrower after writing the October letters.

The Bank will establish that the October letters track industry custom and are consistent with industry standards regarding commenting upon commercial credit information.  The information in the letters was accurate.  The Bank complied with Maine law in responding to its customer's request to prepare the letters.  The Bank owed no special duties to R&P and Four Seas.  The Bank acted in good faith.  R&P and Four Seas had their own independent duty to assess the financial information regarding their customer, Preble Fish.

**2.** **Damages.**

The letters were not the proximate cause of any alleged damages incurred by R&P and Four Seas.  The unpaid invoices were unpaid due to:  Preble's failure to pay bills;

R&P and Four Seas' failure to collect monies due them; and the fact of Preble's bankruptcy filing. The Bank was not the cause of the alleged harm.

Moreover, the alleged "preference claim" damages are an improper element of damages, as detailed in Defendant's Motion in Limine to exclude this evidence. In sum, those "damages" do not yet exist and are entirely speculative. To the extent the alleged preference claims have any relevance in this matter, any probative value is substantially outweighed by the by the danger of unfair prejudice to the Bank: the jury would undoubtedly be confused and misled if expected to differentiate between unpaid invoice damages asserted as caused by the Bank's October 2004 letter versus the separate and completely different preferential transfer calculations, purportedly sought by the bankruptcy trustee. Further, review of the bankruptcy proceedings reveals that the bankruptcy trustee has already compromised other claims for substantially lower dollars than the amounts of the payments in the preference period indicates that any claims by Plaintiffs that they would be required to pay anything more than $8,000.00 are unsubstantiated and misleading (claims of $113,110.00 and $43,492.00 each resolved for $8,000.00). The fact is that unless and until the bankruptcy court orders Plaintiffs to pay back any sums as preferential transfers, a "preference claim" element of damages is improper and does not belong in this case.

If Plaintiffs were to succeed in any claim against the Bank, the Bank contends that at most it could be negligent misrepresentation. The Record is devoid of any evidence of intentional conduct sufficient to sustain the intentional misrepresentation and 93A claims.

If liability were established, Plaintiffs' damages would at most be necessarily limited to a sum for unpaid invoices, not "preference claim" damages.

During discovery Plaintiffs have calculated the unpaid invoice total to include sums incurred *before* October 12, 2004 (the date of their receipt of the October 8, 2004 letters). The evidence will not support such a measure of damages.

Even calculating unpaid invoice damages from October 12, 2004 up to the date of the bankruptcy filing in January 2005 is inappropriate. It is the Bank's position that the unpaid invoice element of damages is more limited in scope. At most it can be measured from December 14, 2004 until the time when Plaintiffs became aware that the refinancing was not going to occur. That is, the date that the SBA refused to go forward with the refinancing and hence, the Bank determined it could not refinance the Preble loans, to the date of the Preble bankruptcy filing is the broadest timeframe within which damages can be assessed.

## II.    STATEMENT OF ESTABLISHED FACTS

### A.    Facts Established by Pleadings

1.    Defendant Kennebunk Savings Bank ("KSB" or "the Bank") is a Maine corporation, engaged in the business of banking, with a principal place of business in Kennebunk Maine. *See* Complaint (Docket No. 1) at p. 1, ¶ 3; *and see* Answer (Docket No. 19) at p. 1, ¶ 3.

2.    Preble Fish had a banking relationship with KSB. *See id.* Complaint at p. 3, ¶ 14 and Answer at p. 3, ¶ 14.

3.    The banking relationship between Preble Fish and KSB included the establishment of deposit accounts by Preble with KSB, a term lending relationship between Preble and KSB whereby Preble borrowed certain amounts from KSB for

repayment over time, and a line of credit between Preble and KSB. *See id.* Complaint at

p. 3, ¶ 15 and Answer at p. 4, ¶ 15.

4.     KSB prepared the October 8, 2004 letters attached to Plaintiffs' Complaint

as Exhibit A thereto. *See id.* Complaint at p. 3, ¶ 16 & Exh. A thereto, and Answer at p.

4, ¶ 16.

5.     The October 8, 2004 letters attached to Plaintiffs' Complaint state in part:

Re:  Robert J. Preble & Sons

> To Whom It May Concern:
>
> Robert J. Preble & Sons located in Kennebunk, Maine has been our
> customer since October 2000.  Recent deposit balances are in the moderate
> six-figure range.  A lending relationship exists within the medium six-
> figure range.  A line of credit commitment exists within the medium six-
> figure range with a moderate six-figure range currently outstanding.  All
> accounts are handled in a satisfactory manner.  The bank is presently
> considering a refinancing package for the company which contemplates
> resolution in November 2004.
>
> If I can be of any further service, please feel free to contact me at (207)
> 985-4903.
>
> Sincerely,
>
> /s/
>
> Eric A. Andrews
> Vice President

*See id.* Complaint at p. 3, ¶ 17 & Exh. A thereto, and Answer at p. 4, ¶ 17.

**B.     Facts Established by Admissions**

None noted at this time.

**C.     Facts Established by Stipulations**

1.     Plaintiff R&P Seafood/Shellfish, Inc. ("R&P") is a Massachusetts

corporation with a principal place of business in Boston Massachusetts.

2.      Plaintiff Four Seas, Inc. ("Four Seas") is a Massachusetts corporation with a principal place of business in Boston Massachusetts.

3.      R&P and Four Seas are engaged in the business of the wholesale sale of seafood to third-party vendors.

4.      Robert J. Preble & Sons, Inc. d/b/a Preble Fish Company (a/k/a "Preble Fish" or "Preble") was a third-party vendor or customer of each Plaintiff.

5.      Preble Fish was also a customer of Kennebunk Savings Bank.

6.      Kennebunk Savings Bank does not have any branches or offices outside the State of Maine.

7.      Preble Fish's debts owed to Kennebunk Savings Bank were secured debts.

8.      Preble Fish's debts owed to R&P and Four Seas were unsecured debts.

9.      On January 26, 2005 Preble Fish filed for protection under Chapter 11 of the Federal Bankruptcy Code of the United States Bankruptcy Court for the District of Maine.  The matter was later converted to a Chapter 7 bankruptcy case.

10.     Upon the filing of Preble Fish's bankruptcy petition in early 2005, Preble stopped paying monies due to its creditors and Preble's business became subject to the orders of the United States Bankruptcy Court for the District of Maine.

### III.     CONTESTED FACTS
### &
### VI.     ISSUES OF LAW

Some general areas of primary contested factual and legal issues include the following:

1.      The significance of the drafting of the October 8, 2004 letters ("the letters") in response to Preble's request;

8

2.      Whether the letters were consistent with banking industry standards regarding such letters;

3.      The accuracy of the information contained in the letters;

4.      Whether R&P and Four Seas justifiably relied on information in the letters;

5.      Whether R&P and Four Seas had other knowledge of financial information regarding Preble;

6.      Whether R&P and Four Seas had a duty to collect and assess financial information regarding Preble;

7.      The impact of Preble's bankruptcy status;

8.      The business relationship, if any, between plaintiffs and the Bank and its significance;

9.      Whether the Bank owed any duty towards R&P and Four Seas and the scope of any such duty;

10.     Whether damages alleged by R&P and Four Seas were proximately caused by the Bank;

11.     The general scope of the unpaid invoices element of damages claimed by R&P and Four Seas;

12.     The propriety of the inclusion of purported "preference claim" damages asserted by R&P and Four Seas;

13.     Whether testimony from Richard Clarke, Plaintiffs' proffered expert, should be limited or excluded;

14.    Whether "intentional" improper conduct can be attributed to the Bank to sustain the <u>intentional</u> misrepresentation claim;

15.    Potentially, whether the elements for the 93A claim have been satisfied (depending on the ruling on the pending choice of law motion);

16.    The potential significance of M.G.L. ch. 259, § 4 (representations as to another's credit should be in writing) (depending on the ruling on the pending choice of law motion); and

17.    The potential significance of Maine banking code provisions and regulatory guidance, including standards cited in Defendant's choice of law motion that address that Maine law specifically prohibits disclosure of financial information of commercial customers.  *See* Maine Bureau of Banking Bulletin #71, July 9, 2001 ("Finally, institutions should be aware that Title 9-B chapter 16 also prohibits the disclosure of financial records held for commercial customers except under certain circumstances and exceptions.") (www.state.me.us/pfr/bkg/bulletins/bull71.htm); 9-B M.R.S.A. §§ 162-164 (depending on the ruling on the pending choice of law motion);

## V.    JURISDICTIONAL QUESTIONS

The matter of jurisdiction of the Court to hear this controversy was raised by Defendant at the outset of this case.  *See* Motion to Dismiss for Lack of Jurisdiction, or, in the Alternative, for Change of Venue, Docket Entry No. 4 (05/13/2005); Memorandum in Opposition to Motion to Dismiss, Docket Entry No. 7 (05/27/2005); Reply Memorandum, Docket Entry No. 9 (06/02/2005).  The Court rejected Defendant's Motion.  *See* Order, Docket Entry No. 17 (11/07/05).

## V.    PENDING MOTIONS

### A.    Plaintiffs

### 1.    Motion in Limine Regarding Richard D. Lund, Jr.

Plaintiffs are filing with their Trial Brief a motion in limine, arguing that the testimony of defendant's expert, Richard D. Lund, Jr., should be excluded.  *See* plaintiffs' Motion in Limine to Exclude Testimony of Richard D. Lund, Jr.

### B.    Defendant

### 1.    Choice of Law

The Bank has filed a choice of law memorandum, arguing that Maine law, not Massachusetts law, is applicable to this case.  *See* Motion in Limine Regarding Choice of Law, Docket Entry No. 22 (May 1, 2006). Plaintiffs argue that Massachusetts law should apply.  *See* Plaintiffs' Memorandum of Law Regarding Choice of Law, Docket Entry No. 23 (May 10, 2006).

### 2.    Motion in Limine Regarding Richard Clarke.

The Bank is filing with its Trial Brief a motion in limine, arguing that the testimony of Plaintiffs' expert, Richard Clarke, should be excluded.  *See* Defendant's Motion in Limine to Exclude Testimony of Richard A. Clarke.

### 3.    Motion in Limine Regarding Preference Claim Damages.

The Bank is filing with its Trial Brief a motion in limine, arguing that the preference claim element of damages Plaintiffs assert as stemming from the Preble bankruptcy matter should be excluded.  *See* Defendant's Motion in Limine to Exclude Evidence of Purported Preference Claim Damages.

## VI.     ISSUES OF LAW
### (Combined with Section III; *see supra*)

## VII.     AMENDMENTS TO THE PLEADINGS

A joint stipulation of the parties was filed by the parties and adopted by the Court in which two counts were dismissed with prejudice from this action:  Count III & IV (unjust enrichment and breach of covenant of good faith and fair dealing).  *See* Stipulation of Voluntary Dismissal Pursuant to F.RCiv.P. 41(a)(1), Docket No. 24 (May 12, 2006); *see also* Order (dismissing Counts III and IV with prejudice), Notation on Docket dated 05/15/2006.

This currently leaves remaining for trial the following three counts:

I:       Intentional Misrepresentation
II:      Negligent Misrepresentation; and
V:       M.G.L. ch. 93A, ¶ 11  (Unfair & Deceptive Trade Practices Act)

However, Count V may not be litigated at trial, depending on the Court's disposition of the pending choice of law motion.  The parties are awaiting a ruling from the Court on the choice of law issue.

## VIII.   ADDITIONAL MATTERS

A.       As noted above, the choice of law matter is outstanding as are motions in limine addressing evidentiary issues.

B.       As Defendant has noted towards the end of the joint exhibit list— objections reserved (*see* Exhibit B, *infra*), it expects to present summaries of financial data from voluminous financial records produced in discovery in this case.  F.R.Evid. 1006.

C.    As Defendant has noted towards the end of the joint exhibit list—objections reserved, (*see* Exhibit B, *infra*), when Plaintiffs' expert Richard Clarke was deposed his file materials were unorganized and contained multiple documents and Plaintiffs' counsel provided him with materials for review after the deposition. Accordingly, Defendant reserves the right to utilize additional documents from Clarke's file materials, not yet individually listed at this time, at trial.

## IX.    PROBABLE LENGTH OF TRIAL

The parties good faith estimate at this time is that the trial will last four to five days.

## X.    WITNESSES

### A.    Plaintiffs

### 1.    Fact Witnesses:

Eric A. Andrews
Kennebunk Savings Bank
104 Main Street
P.O. Box 28
Kennebunk, ME  04043
1-800-339-6573 or 207-985-4903

Lorraine H. Boston
Kennebunk Savings Bank
104 Main Street
P.O. Box 28
Kennebunk, ME  04043
1-800-339-6573 or 207-985-4903

Michael Scola
R & P Seafood/Shellfish, Inc.
8 Seafood Way, Units 5 & 6
Boston, MA
1-617-946-9850

13

Peter Gallagher
8 Seafood Way, Unit 8
Boston, MA 02210
1-617-261-1400

Jere Shaw
Evergreen Credit Union
225 Riverside Street
P.O. Box 1038
Portland, ME 04104
1-207-221-5000 x-322

Michael Fagone, Esq.
Bernstein Shur
100 Middle Street
PO Box 9729
Portland, ME 04104-5029

Fred W. Bopp, III, Esq.
Perkins, Thompson, Hinckley & Keddy, P.C.
One Canal Plaza
P.O. Box 426
Portland, ME 04112
1-207-774-2635

Jennifer Pincus, Esq.
Perkins, Thompson, Hinckley & Keddy, P.C.
One Canal Plaza
P.O. Box 426
Portland, ME 04112
1-207-774-2635

Frank Martino
Seafax, Inc.
P.O. Box 15340
Portland, ME 04112
1-800-777-3533

Rob Frank
Seafax, Inc.
P.O. Box 15340
Portland, ME 04112
1-800-777-3533

Brian Siebert
Seafax, Inc.
P.O. Box 15340
Portland, ME 04112
1-800-777-3533

Vincent L. Clough
819 Alewive Road
Kennebunk, ME  04043
207-985-7969

### 2.      Expert Witnesses:

Mr. Richard A. Clarke
14 Douglass Green
Woburn, MA 01801

(curriculum vitae attached hereto as <u>Exhibit C</u>)

### 3.      Witnesses by Deposition:

Joel W. Stevens
Kennebunk Savings Bank
104 Main Street
P.O. Box 28
Kennebunk, ME  04043
1-800-339-6573 or 207-985-4903

### B.    <u>Defendant</u>

### 1.      Fact Witnesses:

Eric A. Andrews
Kennebunk Savings Bank
104 Main Street
P.O. Box 28
Kennebunk, ME  04043
1-800-339-6573 or 207-985-4903

Lorraine H. Boston
Kennebunk Savings Bank
104 Main Street
P.O. Box 28
Kennebunk, ME  04043
1-800-339-6573 or 207-985-4903

Jennifer Kearns
Kennebunk Savings Bank
104 Main Street
P.O. Box 28
Kennebunk, ME  04043
1-800-339-6573 or 207-985-4903

Vincent L. Clough
819 Alewive Road
Kennebunk, ME  04043
207-985-7969

**2.     Expert Witnesses:**

Richard D. Lund, Jr.
Sovereign Bank of New Hampshire
1 Wall Street
Manchester, NH  03101
1-603-222-6810

(curriculum vitae attached hereto as <u>Exhibit D</u>)

**3.     Witnesses by Deposition:**

Joel W. Stevens
Kennebunk Savings Bank
104 Main Street
P.O. Box 28
Kennebunk, ME  04043
1-800-339-6573 or 207-985-4903

## XI.—XII.    EXHIBITS

### A.    Joint Exhibit List

A list of exhibits upon which the parties agree at this time is attached as <u>Exhibit A.</u>  The documents are listed by a single sequence of numbers.

### B.    Exhibit List—Objections Reserved

A list of exhibits upon which the parties reserve objection is attached as <u>Exhibit B.</u>  The documents are listed by a single sequence of letters.

## XIII.   ADDITIONAL OBJECTIONS

### A.    Plaintiffs.

### B.    Defendants.

As discussed in Defendant's Trial Brief, Defendant anticipates that it will object at trial to Plaintiffs' introduction of evidence from Seafax, including witnesses and documents.  Defendant anticipates raising potential hearsay issues with such evidence, depending on how and for what purpose the information is utilized.  F.R.Evid. 802.  Also, Plaintiffs have referenced M.G.L.A. ch. 259, § 4 as applicable to this case (representations as to another's credit must be in writing).  *See, e.g.,* Plaintiffs' Memorandum Regarding Choice of Law, Docket Entry No. 23 (May 10, 2006).   Should Massachusetts law apply to this case, to the extent that information from Seafax is based upon verbal, as opposed to written, information about Preble Fish, it would also be objectionable on the ground of relevance on this basis. F.R.Evid. 402.

## XIV.   RULE 7.1(A)(2) CERTIFICATION

The undersigned counsel hereby certify that prior to filing this joint pretrial memorandum counsel addressed and attempted in good faith to resolve disputed matters referenced herein, including the matters in the parties' incorporated submissions.

L.R.D.Mass. 7.1(A)(2).

Dated at Portland, Maine this 30th day of May, 2006.


**THOMPSON & BOWIE, LLP**          /s/ Lisa F. Bendetson
Three Canal Plaza
P.O. Box 4630                                    Lisa F. Bendetson, Esq. (BBO#567069)
Portland, ME  04112
(207) 774-2500                                  /s/ James M. Bowie

                                                        James M. Bowie, Esq.
                                                        Attorneys for Defendant,
                                                        Kennebunk Savings Bank


Dated at Peabody, Massachusetts this 30th day of May, 2006


**Antico, Barrett, Burke & Kornitsky LLP**  /s/  Marc D. Kornitsky
One Essex Green Drive
Peabody, MA  01960                          Marc D. Kornitsky, Esq. (BBO#564552)
(978) 532-5140                                  Attorney for Plaintiffs,
                                                        R&P Seafood/Shellfish, Inc. and
                                                        Four Seas, Inc.


## CERTIFICATE OF SERVICE

I, James M. Bowie/Lisa F. Bendetson, attorney for Defendant, Kennebunk Savings Bank, hereby certify that I made service of the foregoing document titled:  "Joint Pretrial Memorandum" with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following: Marc D. Kornitsky, Esq.,  and I hereby certify that on this date I did not mail by the United States Postal Service, said

submission to non-registered participants as there are no non-registered participants for

this case.

Dated at Portland, Maine, this 30th day of May, 2006.

/s/ Lisa F. Bendetson
_____
Lisa F. Bendetson, Esq. (BBO#567069)

/s/ James M. Bowie
_____
James M. Bowie, Esq.
Attorneys for Defendant, Kennebunk Savings Bank

**THOMPSON & BOWIE, LLP**
Three Canal Plaza
P.O. Box 4630
Portland, ME  04112
(207) 774-2500

**JOINT PRETRIAL MEMORANDUM**

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| R&P SEAFOOD/SHELLFISH, INC. &<br>FOUR SEAS, INC. | )<br>)<br>) |
|      Plaintiffs | )<br>) |
| v. | )      Case No. 05-cv-10420-MLW |
| | ) |
| KENNEBUNK SAVINGS BANK, | )<br>) |
|      Defendant | ) |

**JOINT EXHIBIT LIST**

NOW COME the parties, by and through their attorneys, and pursuant to the Court's

Order setting case for trial dated March 1, 2006, hereby provides the following joint exhibit list

as Exhibit A to the Joint Pretrial Memorandum as follows:

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| 1 | 10/06/04 | E-Mail message from Robert Bradway to Eric Andrews with attached vendor addresses list (Clough: 7; Stevens: 4) | | | |
| 2 | 10/08/04 | October 8, 2004 letter to Four Seas (Clough: 8; Gallagher: 5; Stevens: 6) | | | |
| 3 | 10/08/04 | October 8, 2004 letter to R&P Shellfish (Clough: 8; Scola: 1; Stevens: 6) | | | |
| 4 | (02/09/05) | Handwritten list of vendors faxed from Preble Fish on 02/09/05 (Scola: 4) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| 5 | 01/30/04 | Letter to Southstream Seafoods from Eric A. Andrews with attachments (Andrews:  23; Clough 1) | | | |
| 6 | 06/16/04 | Letter to ORION Seafood International from Eric A. Andrews with attachments (Andrews:  25; Clough: 2) | | | |
| 7 | 07/26/04 | Letter to SeaFax from Lorraine Boston with attachment from Seafax & fax confirmation sheet (from Bank discovery) | | | |
| 8 | 08/12/04 | Letter to UniFirst Corp. from Eric A. Andrews with attachments (from Bank discovery) | | | |
| 9 | Undated | KSB Commercial Credit Reference Policy (Stevens:  3) | | | |
| 10 | Undated | KSB Loan Ratings | | | |
| 11 | 04/26/04 | Preble Loan Proposal (Andrews:  13) | | | |
| 12 | 10/12/04 | Preble Loan Proposal (Clough:  5; Stevens:  5) | | | |
| 13 | 09/30/04 | Letter from KSB to Appraisal Services Requesting Appraisal of Preble Property (from Bank discovery) | | | |
| 14 | 11/19/04 | Summary Report of a Complete Appraisal (Andrews:  17) | | | |
| 15 | 10/20/04 | Letter to Eric Andrews from Brad Bradway (Clough:  6) | | | |
| 16 | 10/27/03 | Interoffice memo from Eric Andrews to Lorraine Boston re change from 3C to 4 OAEM (Stevens:  2) | | | |
| 17 | | RR 4 Special Mention Preble (Andrews:  14) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| 18 | 03/09/04 | Letter to Cindy Stewart from Vincent Clough with sketch (from CEI docs) | | | |
| 19 | 03/29/04 | Fax cover sheet from Cindy Stewart at CEI to Eric Andrews with 3/29/04 letter from Cindy Stewart to Vinnie Clough (from CEI docs) | | | |
| 20 | 06/01/04 | KSB letter to CEI (Andrews: 16) | | | |
| 21 | 06/28/04 | Loan Modification Request form & attached documents (release of Duane Preble as Guarantor) (from Bank discovery and Stevens: 8) | | | |
| 22 | 05/18/04 | Letter to Duane Preble and Vincent Clough from Eric Andrews with attachment (Andrews: 21; Clough: 11) | | | |
| 23 | 5/18/04 | KSB Commitment Letter $100,000 letter of credit (Portland Fish Exchange) (Stevens: 7) | | | |
| 24 | 5/19/04 | KSB Commitment Letter $500,000 line of credit (Stevens: 7 "attachment") | | | |
| 25 | 9/21/04 | KSB Commitment Letter $50,000 letter of credit (Portland Fish Exchange) (from Bank discovery) | | | |
| 26 | 8/17/04 | Memo to Preble File from Lorraine Boston re $50,000 letter of credit (from Bank discovery) | | | |
| 27 | 8/23/04 | Letter from Eric Andrews to Bradway and Clough re Preble percentage stock ownership with attached e-mails from 08/18-08/20/04 | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| 28 | 12/01/04 | E-Mail from Eric Andrews to Jere Shaw (Andrews: 26) | | | |
| 29 | 12/08/04, 12/09/04, and 12/10/04 | E-mails to/from Eric Andrews Jere Shaw, Robert Small (and others) re December mtg. re Preble (from Bank discovery) | | | |
| 30 | 12/10/04 | E-mail from Brad Bradway to Eric Andrews (from Bank discovery) | | | |
| 31 | 12/13/04 | Letter from Brad Bradway to Jere Shaw with:<br><br>A) 2005 Forecast table;<br>B) Estimated Balance sheet as of 12/31/05;<br>C) Balance Sheet as of Nov. 30, 2004 (run 12/13/04); & D) Income Statement (run 12/13/04) (from CEI docs & Bank discovery) | | | |
| 32 | 12/15/04 | Memo from Eric Andrews to Preble file and Lorraine Boston (from Bank discovery) | | | |
| 33 | 12/20/04 & 12/16/04 | E-mails msgs: 12/16/04 to Eric Andrews from Robert Small;<br>12/20/04 to Eric Andrews from Jere Shaw (Andrews: 27) | | | |
| 34 | | Preble Key Operational Comparisons 2004 vs. 2003 | | | |
| 35 | (04/12/05 print date) | Note 20007313, Preble Loan to Date (Payment history) (from Bank discovery) | | | |
| 36 | (04/12/05 print date) | Note 20007315, Preble Loan to Date (Payment history) (from Bank discovery) | | | |

4

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| 37 | (04/12/05 print date) | Note 2000**7496**, Preble Loan to Date (Payment history) (from Bank discovery) | | | |
| 38 | (04/12/05 print date) | Note 2000**7497**, Preble Loan to Date (Payment history) (from Bank discovery) | | | |
| 39 | (04/12/05 print date) | Note 2000**7511**, Preble Loan to Date (Payment history) (from Bank discovery) | | | |
| 40 | (04/12/05 print date) | Note 2000**8647**, Preble Loan to Date (Payment history) (from Bank discovery) | | | |
| 41 | (04/12/05 print date) | Note 2000**9788**, Preble Loan to Date (Payment history) (from Bank discovery) | | | |
| 42 | (04/12/05 print date) | Note 200**15153**, Preble Loan to Date (Payment history) (from Bank discovery) | | | |
| 43 | (01/11/05 print date) | CEI Loan No. 3902144005 loan payments summary, with cover sheet to Dan Doyon at Preble from Irene Grondin at CEI (from CEI docs) | | | |
| 44 | | Preble Net Loanable Value from Worksheet Summary 02/19/04-10/31/04 (with attachment print date of 11/26/04) (Stevens:  9; Andrews: 19) | | | |
| 45 | (12/24/04 & 12/21/04 print dates) | Preble Account Ledger printout with attached payment receipts (Andrews:  22) | | | |
| 46 | 6/22/01 | Third-Party Lender Agreement (CEI & SBA) (from CEI docs) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| 47 | 6/25/01 | Subordination Agreement (CEI and KSB) (from CEI docs) | | | |
| 48 | 6/25/01 | *Second* Subordination Agreement (CEI and KSB) (from CEI docs) | | | |
| 49 | 7/25/01 | Intercreditor Agreement (CEI and KSB) (from CEI docs) | | | |
| 50 | 05/20/03, 05/04/04, 07/06/04, 12/21/04, 01/04/05, 01/18/05, 02/15/05 | KSB Board of Directors Minutes (redacted to reflect Preble only) (from Bank discovery and Stevens:  10) | | | |
| 51 | (10/04/04 print date) | (Preble AP Cash Requirements Report run 10/04/04) (from Bank discovery & CEI docs) | | | |
| 52 | (04/10/05 print date) | Preble AP Cash Requirements Report (Scola:  7) | | | |
| 53 | 02/22/04 | Preble Accountant's Report Financial Statements 2002-2003 (Andrews:  15) | | | |
| 54 | | Preble Financials: June 2004: "Forecast/Actual/Budget" (from Bank discovery) (went to Clarke after depo) | | | |
| 55 | | Preble Financials July 2003-July 2004 "Actual/Actual" (from Bank discovery) (went to Clarke after depo) | | | |
| 56 | | Preble Financials July 2003-July 2004 "Wholesale" (from Bank discovery) (went to Clarke after depo) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| 57 | | Preble Financials "July 2004 Compared to July 2003 Year to Date" (from Bank discovery) (went to Clarke after depo) | | | |
| 58 | | Preble Financials "August 2004 compared to August 2003 Year to Date" (from Bank discovery) (went to Clarke after depo) | | | |
| 59 | | Preble Financials "September 2004 compared to September 2003 Year to Date" (from Bank discovery) (Andrews:  20) | | | |
| 60 | | Preble Financials "Monthly Analysis Overall" August 2003 Actual to August 2004 Actual (from Bank discovery) (went to Clarke after depo) | | | |
| 61 | | Preble Financials August 2003-August 2004 "Wholesale" (from Bank discovery) (went to Clarke after depo) | | | |
| 62 | (08/16/04 print date) | Preble Balance Sheet as of July 31, 2004 "Current period 08/01 to 08/31/04" (from Bank discovery) (went to Clarke after depo) | | | |
| 63 | (08/16/04 print date) | Preble Income Statement "Current period 08/01 to 08/31/04" (from Bank discovery) (went to Clarke after depo) | | | |
| 64 | (09/16/04 print date) | Preble Balance Sheet as of August 31, 2004 "Current period 09/01 to 09/30/04" (from Bank discovery) (went to Clarke after depo) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| 65 | (09/16/04 print date) | Preble Income Statement "Current period 09/01 to 09/30/04" (from Bank discovery) (went to Clarke after depo) | | | |
| 66 | | Preble Net Loanable Value from Worksheet Summary 04/23/03-11/29/04 (from Bank discovery) | | | |
| 67 | 01/31/04 (month ending January 2004) | Base Borrowing Certificate, With: A/R—01/31/04 (from Bank discovery) | | | |
| 68 | 03/16/04 (month ending February 29, 2004) | Base Borrowing Certificate, with: A/R—03/06/04, February 2004 Inventory (from Bank discovery) | | | |
| 69 | 04/02/04 | Weekly Desktop Reconciliation with: A/R—04/02/04, Inventory March 2004 (from Bank discovery) | | | |
| 70 | 05/04/04 | Weekly Desktop Reconciliation with: net loanable value summary (Clough: 3) | | | |
| 71 | 05/06/04 (month ending April 30, 2004) | Borrowing Base Certificate with: A/R—04/30/04, Inventory April 2004 (from Bank discovery) | | | |
| 72 | 06/08/04 (month ending May 31, 2004) | Borrowing Base Certificate with: A/R 05/31/04, Inventory May 2004 (from Bank discovery) | | | |
| 73 | 07/07/04 (month ending June 2004) | Borrowing Base Certificate with: A/R—06/30/04 (from Bank discovery) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| 74 | 08/10/04 (month ending July 31, 2004) | Borrowing Base Certificate with:  A/R—07/31/04 (from Bank discovery) | | | |
| 75 | 09/09/04 (month ending August 2004) | Borrowing Base Certificate with: A/R--08/31/04, Inventory August 2004 (from Bank discovery) | | | |
| 76 | 09/28/04 | Weekly Desktop Reconciliation with:  net loanable value summary (Clough:  4) | | | |
| 77 | 10/07/04 (month ending September 30, 2004) | Borrowing Base Certificate With:  A/R 09/30/04, Inventory September 2004 (from Bank discovery) | | | |
| 78 | 10/19/04 (month ending as of October 18, 2004) | Borrowing Base Certificate With:  A/R—10/18/04 (from Bank discovery) | | | |
| 79 | 10/25/04 (month ending as of October 25, 2004) | Borrowing Base Certificate with:  A/R—10/25/04 (from Bank discovery) | | | |
| 80 | 11/08/04 (month ending October 2004) | Borrowing Base Certificate with:  A/R 10/31/04, Inventory October 2004 (from Bank discovery) | | | |
| 81 | 12/09/04 (month ending November 2004) | Borrowing Base Certificate with:  A/R—11/30/04, Inventory November 2004 (from Bank discovery) | | | |
| 82 | 12/20/04 (month ending as of December 20, 2004) | Borrowing Base Certificate with:  A/R—12/20/04 (from Bank discovery) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| 83 | 01/06/05 (month ending as of December 31, 2004) | Borrowing Base Certificate with:  A/R—12/31/04, Inventory December 2005 (from Bank discovery) | | | |
| 84 | 12/31/2002 | Four Seas Statement for Preble Account (Gallagher:  2) | | | |
| 85 | 12/31/2003 | Four Seas Statement for Preble Account (Gallagher:  2) | | | |
| 86 | 12/30/2004 | Four Seas Statement for Preble Account (Gallagher:  2) | | | |
| 87 | 01/07/04 to 11/10/04 | Handwritten list of Preble Fish Calls (Gallagher) (Gallagher:  3) | | | |
| 88 | 01/09/04 to 02/04/05 | Four Seas Payment History Preble Fish Co. (Gallagher: 4) | | | |
| 89<br><br>Issue: handwriting illegible on some copies—ask Plaintiffs' counsel to have originals on hand at trial. | 01/02/04 to 12/23/04<br><br>(42 weeks of reports—almost weekly) | Four Seas Open Invoices (from Four Seas files produced at Four Seas depo)<br><br>Exhibit marked only (1st and last pages copied as sample for reference) | | | |
| 90 | (02/22/05 print date) | R&P Customer Ledgers Preble 01/01/03 – 02/28/05 (Scola:  2) | | | |
| 91 | (06/16/05 print date) | R&P Aged Receivables Preble as of 06/16/05 (Scola:  2A) | | | |
| 92 | (12/23/04 print date) | R&P Aged Receivables Preble as of 12/23/04 (Scola:  5) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| 93 | 08/13/04 to 01/04/05 | R&P Invoices Preble (from R&P discovery)<br><br>Exhibit marked only (1st and last pages copied as sample for reference) | | | |
| 94 | 05/24/04 to 01/18/05 | R&P Receipts Preble (from R&P discovery)<br><br>Exhibit marked only (1st and last pages copied as sample for reference) | | | |
| 95 | 10/27/04 to 01/04/05 | Copies of ten checks written by Preble to R&P (from R&P discovery) | | | |
| 96 | 01/10/05 | Letter from Andrews to Clough & Bradway with attached "forecasted cash position" and fax confirmation sheets | | | |
| 97 | Undated | Clarke's "RMA Credit Materials" produced at 04/12/06 deposition as Exhibit 5 | | | |
| 98 | 05/28/04 | Preble Line of Credit Agreement $500,000 with attached security agreement | | | |
| 99 | 06/28/04 | Preble Letter of Credit Agreement re Portland Fish Exchange $100,000 with attached advancing demand note | | | |
| 100 | 09/21/04 | Preble Letter of Credit Agreement re Portland Fish Exchange $50,000 With attached advancing demand note and assignment of certificate of deposit or other deposit | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

JOINT PRETRIAL MEMORANDUM
EXHIBIT B

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| R&P SEAFOOD/SHELLFISH, INC. & FOUR SEAS, INC. | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Case No. 05-cv-10420-MLW |
| KENNEBUNK SAVINGS BANK, | ) ) | |
| Defendant | ) | |

## JOINT EXHIBIT LIST—OBJECTIONS RESERVED

NOW COME the parties, by and through their attorneys, and pursuant to the

Court's Order setting case for trial dated March 1, 2006, hereby provides the following

separate joint exhibit list as to which objections are reserved as Exhibit B to the Joint

Pretrial Memorandum as follows:

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| A | 12/28/04 | Seafax Business Report re Preble<br><br>(first 12/28/04 report—credit appraisal and risk index section on first page is blank)<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| B | 12/28/04 | Seafax Business Report re Preble<br><br>(*second* 12/28/04 report—credit appraisal and risk index section on first filled in)<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| C | 07/28/04 | Seafax Business Report re Preble<br><br>**(Scola:  6**—from R&P file produced at R&P depo— Scola)<br><br>and<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| D | 02/03/04 | Seafax Business Report re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| E | 07/31/03 | Seafax Business Report re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| F | 01/29/03 | Seafax Business Report re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| G | 06/26/02 | Seafax Business Report re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| H | 01/27/05 back to 01/21/05 | Seafax notes re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| I | 01/21/05 back to 01/04/05 | Seafax notes re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| J | 12/30/04 back to 12/28/04 | Seafax notes re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| K | 12/28/04 back to 02/03/04 | Seafax notes re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| L | 02/03/04 back to 05/19/03 | Seafax notes re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| M | 02/06/03 back to 06/17/02 | Seafax notes re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| N | 06/13/02 back to 11/21/01 | Seafax notes re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| O | 12/18/04 | Seafax Company Information Report re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| P | 02/28/05 back to 12/29/04 | Seafax News sheets re Preble<br><br>(produced by Seafax per Plaintiffs' document subpoena) | | | |
| Q | 12/29/04 | Seafax "First News" re Preble<br><br>(from R&P file produced at R&P depo—Scola) | | | |
| R | 01/10/05 | Seafax "First News" re Preble<br><br>(from R&P file produced at R&P depo—Scola) | | | |
| S | 02/11/05 | Seafax "First News" re Preble<br><br>(from R&P file produced at R&P depo—Scola) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| T | 07/15/04 | E-mails (X2) from Jere Shaw to Martin Orr with handwritten notations<br><br>(from CEI docs produced per Plaintiffs' document subpoena) | | | |
| U | May 2004 | Handwritten notes (2 pages) and notations on Portland Fish Exchange letter (1 page) | | | |
| V | May 2004 | Preference Complaints re Preble Bankruptcy Action | | | |
| W | Undated | Clarke's "file" produced at 04/12/06 deposition.<br><br>The parties reserve the right to utilize documents from Clarke's file, but have not copied the full materials as a single exhibit, as the information was not organized in any particular order and contained multiple documents and Plaintiffs' counsel provided additional information to Clarke after the deposition. | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| X | Monthly (January 31 to December 31, 2004) | R&P Aged Receivables 30/60/90 Reports | | | |
| Y | | July 2004 documents from CEI/SBA re: new owner (CEI docs) | | | |
| Z | 8/11/00 | Authorization for Debenture Guarantee (SBA 504 Loan) (CEI docs) | | | |
| AA | 7/17/01 | CEI Letter (Cynthia Stewart) to SBA (CEI docs) | | | |
| BB | 7/25/01 | Note to SBA (CEI docs) | | | |
| CC | 7/25/01 | Unconditional Guarantee of Duane Preble to SBA (CEI docs) | | | |
| DD | 7/25/01 | Unconditional Guarantee of Vincent Clough to SBA (CEI docs) | | | |
| EE | 5/13/00 | CEI Credit Memo (CEI docs) | | | |
| FF | 4/02/02 | CEI fax cover sheet re: subordination on $200M to $500M credit line (CEI docs) | | | |
| GG | 3/27/02 | KSB letter to CEI re: subordination on $200M to $500M credit line, with attached loan proposal (CEI docs) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|:---:|---|---|---|---|---|
| HH | 4/02/02 | CEI request to SBA for subordination on $200M to $500M credit line (CEI docs) | | | |
| II | 4/12/02 | SBA letter to CEI re: subordination $200M to $500M (CEI docs) | | | |
| JJ | 4/17/02 | CEI fax cover sheet re: SBA approval of subordination (CEI docs) | | | |
| KK | 7/25/01 | Agreement and Certification from Borrowers and Guarantors (CEI docs) | | | |
| LL | 1/29/01 | CEI note of $100M and Mortgage Loan Docs (CEI docs) | | | |
| MM | 10/18/00 | $500M KSB Note (acct 20007313) (CEI docs) | | | |
| NN | 10/18/00 | $400M KSB Note (acct 20007314) (CEI docs) | | | |
| OO | 10/18/00 | $200M KSB Note (acct 20007497) (CEI docs) | | | |
| PP | 7/25/01 | CEI letter to KSB (CEI docs) | | | |
| QQ | 7/16/04 | Fax from CEI to Eric Andrews re: release of Duane Preble (four pages) (CEI docs) | | | |
| RR | 12/13/04 | Letter from Brad to Jere Shaw re: meeting with attached notes (CEI docs) | | | |

| Exhibit No. | Date | Description | Offered | Objection | Admitted |
|---|---|---|---|---|---|
| SS | 6/29/04 | E-mail from Jim Maxwell to Jere Shaw | | | |
| TT | 10/20/03 | Prepayment docs from CEI (10 pages) (CEI docs) | | | |
| (Summary exhibit(s) to be Prepared by Defendant) F.R.Evid. 1006 | Multiple dates | Source: Preble Bankruptcy Action: Filings/Orders Reflected on Bankruptcy Court Docket Addressing Preference Claims | | | |
| (Summary exhibit(s) to be Prepared by Defendant) F.R.Evid. 1006 | Multiple dates | Source: Financial records regarding Preble (e.g. Weekly Desktop Reconciliations; Base Borrowing Certificates; net loanable value sheets, etc. produced during discovery) | | | |
| (Summary exhibit(s) to be Prepared by Defendant) F.R.Evid. 1006 | Multiple dates | Source: Damages information: Financial records produced from R&P and Four Seas at the depositions of R&P and Four Seas | | | |

**RICHARD A. CLARKE**
14 Douglass Green
Woburn, Massachusettts
Telephone 781-935-3827
ra.clarke@comcast.net

**EXECUTIVE SUMMARY**

A banking executive who played a pivotal role in Bank of Boston successes in domestic and international workout, New England credit and rehabilitation of real estate lending.  Exceptional strengths in credit training, staff development, credit controls, policies and process, compliance and due diligence.

**PROFESSIONAL EXPERIENCE**

1992 - Present    **Independent Consulting**
Developed a successful consulting practice focused on bank credit and workout requirements, expert witness activities and counseling of debt reliant businesses.

- Clients include a large number of New England banks, large finance and insurance companies and numerous law firms throughout the country.

- Maintains industry focus as moderator/chairman of numerous Risk Management Associates(RMA) national events. Author of numerous professional publications.

- Enjoys national reputation as a practical, hands-on resource across the commercial lending spectrum.

**THE FIRST NATIONAL BANK OF BOSTON, BOSTON, MA (1969 - 1991)**

1989 - 1991    **Senior Credit Officer - Real Estate Group**
Managed the resolution of issues cited under formal Articles of Agreement with the Office of the Comptroller of the Currency pertaining to corporate-wide real estate exposure.

- Made Bank of Boston a recognized leader in real estate credit administration and resolution of problem loans.

- Goal-driven net reduction in portfolio from $6.6 billion to $4.0 billion successfully completed while granting

$800M in new accommodations.

**RICHARD A. CLARKE**                                    **Page Two**

- Chairman of the Credit Committee.

- Industry recognition of accomplishments
  resulted in being appointed Chairman of
  Robert Morris Associates' Real Estate
  Credit Roundtable in 1990 and 1991.

1989            **Special Assignment -** Agent for the Wang
                Laboratories debt restructuring.  Completed
                world-wide collateral taking in 6 weeks.
                Result:  protection of bank group's exposure
                and ultimate payment in full.

1986 - 1989     **Senior Credit Officer - New England Group**
                Managed credit quality of $8 billion
                diversified loan portfolio.

- Consolidated credit processes and
  standards of 5 autonomous banks within
  the holding company.

- Chairman of the Credit Committee.

- Actions resulted in superior performance
  of this portfolio compared with other
  lenders making commercial loans in the
  northeast.

- Led the due diligence process in bank
  acquisitions.

1985 - 1986     **First Vice President - International Group**
                Introduced state-of-the-art credit and workout concepts throughout Bank of Boston's
                global banking organization resulting in improved credit process, immediate and
                sustained improvement in credit quality and loan recoveries.

1975 - 1985     **First Vice President - Loan Review Division**
                Provided leadership for the emerging domestic
                loan review function.  Managed all aspects
                but with primary emphasis on loan workout.

- Transformed traditional workout function
  into fully integrated, highly visible
  organizational unit on equal footing with
  new business activities.

**RICHARD A. CLARKE**                                        **Page Three**

- Personnel hired and trained during this period subsequently assumed leadership roles in the organization.

- Developed this function into the preeminent workout unit in U.S. banking.

1969 - 1975    **Various Assignments** in lending, loan review, and bank acquisitions after completing loan officer training program.

## MILITARY

U.S. Navy, Lieutenant.

- Decorated combat veteran.

## EDUCATION

M.B.A.,  University of Massachusetts.

B.A., Economics,  University of Massachusetts.

## REFERENCES

Available from any entity shown on current client list.

Richard D. Lund, Jr.
38 Piscataqua Road
Dover, New Hampshire 03820-5205

| | |
|---|---|
| 2002 – Present | **Ocean National Bank, Kennebunk, ME**<br>Executive Business Development Officer (Part-time) |
| 2000 – Present | **Matson Consulting Group, LLC, Dover, NH**<br>President, CEO & Founder.  Company provides financial, business development and executive search services. |
| 1995 – 2000 | **Farmington National Bank, Farmington, NH**<br>President & CEO.  Directed the operations of this $275,000,000 financial institution.  Increased assets by 70% and earnings by more than 300%. |
| 1982 – 1995 | **First NH Banks, Portsmouth and Manchester, NH**<br>**1990-1995** Senior Vice President – Commercial Banking. Managed commercial lending and related activities of various regional and specialized lending groups.<br>**1982-1990** President & CEO, First NH Exeter Banking Company, institution which experienced asset growth of 200% and earnings growth of 400% during the period of my presidency. |
| 1997 – 1982 | **Casco Bank & Trust Company, Portland, ME**<br>Vice President – Commercial Banking |
| 1973 – 1977 | **Main National Bank, Portland, ME**<br>Vice President – Commercial Banking |
| 1969 – 1973 | **Bankers Trust Company, New York, NY**<br>Assistant Treasurer & Commercial Lending Officer |
| 1967 – 1969 | **Federal Reserve Bank of New York, New York, NY**<br>Mergers & Acquisitions Specialist<br>Management Trainee |
| **Education:** | **Colby College, Waterville, ME**<br>1967 BA, Economics<br><br>1967 – 2000 Various professional schools and seminars |

<u>Richard D. Lund, Jr., Market President – New Hampshire</u>

With more than 20 years experience in the banking industry, Rick Lund has held a variety of management positions with New Hampshire banking institutions.  Lund joined Sovereign in 2003 as president of Sovereign's commercial banking activities in New Hampshire.
Previously, he worked for Farmington National Bank as President and CEO, and First New Hampshire Bank.

Lund is involved in a number of professional and community organizations, including the New Hampshire Bankers Association, Chairman of Chapters Division Council, Frisbie Memorial Hospital, United Way and Junior Achievement.  A resident of Dover, New Hampshire, he holds a B.A. in economics from Colby College in Waterville, Maine.

**Richard Lund**
**President/Market Manager**
**Sovereign Bank, New Hampshire**


Rick is currently Sovereign's New Hampshire Market President with responsibility for overseeing the bank's retail and commercial activities in the state.

Currently, Sovereign operates 20 branches in New Hampshire with total deposits exceeding $850MM and consumer loans of nearly $75MM.  It's commercial presence includes over $100MM in deposits and $240MM in loans.

In addition to its traditional commercial banking facilities, Sovereign's New Hampshire operation includes the Residential Construction Lending Specialty group which concentrates on lending to small and medium sized residential single-family homebuilders.  This specialty which came to Sovereign through its acquisition of First Essex Bank, has experienced 50% growth over the last two years and now accounts for nearly $50MM in outstanding loans.

Rick came to Sovereign in 2003 and has nearly 40 years of banking experience, including serving as President and CEO of the Farmington National Bank in Farmington, New Hampshire and the Exeter Banking Company in Exeter, New Hampshire.