UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| R&P SEAFOOD/SHELLFISH, INC. & <br> FOUR SEAS, INC. <br><br> Plaintiffs <br><br> v. <br><br> KENNEBUNK SAVINGS BANK, <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 05-cv-10420-MLW <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT'S TRIAL BRIEF**

NOW COMES Defendant, Kennebunk Savings Bank, by and through its attorneys, Thompson & Bowie, LLP, and pursuant to L.R.D.Mass. 16.5 and the Court's Order setting case for trial dated March 1, 2006, submits its trial brief as follows.

**I.     Presentation of Case:  Summary of Principle Claims & Defenses**

**A.     Overview**

As stated in Defendant's portion of the "Summary of Evidence" section of the Joint Pre-Trial Memorandum, a general overview of the case Defendant expects to be developed at trial can be summarized as follows.

**1.     Background regarding Liability Issues.**

This litigation is advanced by two wholesale seafood distributors located in Massachusetts—R&P and Four Seas.  Robert J. Preble & Sons or "Preble Fish" was a customer of R&P and Four Seas.  Preble is a Maine business.  Preble bought wholesale seafood product from R&P and Four Seas and sold it to its customers in Maine.  Preble is no longer in business—the federal bankruptcy court in Maine

approved the sale of Preble in 2005. The bankruptcy case is ongoing. Unsecured creditors such as R&P and Four Seas were owed money by Preble at the time of Preble's bankruptcy filing. R&P and Four Seas have not recouped their losses through the bankruptcy proceedings. They are advancing their claims against the Bank in this litigation to attempt to recover monies they were owed by Preble. The Bank never had a business relationship of any kind with R&P or Four Seas. The Bank's relationship was with Preble, its customer.

Preble experienced cash flow problems in 2004. On or about October 8, 2004, the Bank issued letters directed to businesses in the seafood industry who dealt with Preble, commenting upon the status of the Preble account, in response to Preble's request. The correspondence was printed on Bank letterhead and stated:

> Re:  Robert J. Preble & Sons
>
> To Whom It May Concern:
>
> Robert J. Preble & Sons located in Kennebunk, Maine has been our customer since October 2000. Recent deposit balances are in the moderate six-figure range. A lending relationship exists within the medium six-figure range. A line of credit commitment exists within the medium six-figure range with a moderate six-figure range currently outstanding. All accounts are handled in a satisfactory manner. The bank is presently considering a refinancing package for the company which contemplates resolution in November 2004.
>
> If I can be of any further service, please feel free to contact me at (207) 985-4903.
>
> Sincerely,

2

/s/

Eric A. Andrews
Vice President

Identical letters were re-printed and addressed directly to multiple businesses at the request of the Bank's customer, Preble Fish. The letters were not actually mailed out to the businesses by the Bank. Vinny Clough of Preble came to the Bank and picked up the letters and hand-delivered them to R&P and Four Seas.

At a meeting on December 14, 2004 the SBA/CEI refused to refinance its loans with Preble. Since this necessary party failed to go along with the refinancing plan, the Bank did not ultimately refinance its loans with Preble. Thereafter, Preble filed for bankruptcy.

Until the December 14, 2004 meeting the bank expected that the refinancing package would be approved. The evidence reflects that the Bank was treating Preble as a satisfactory customer: the amounts being borrowed were being paid down regularly; the Bank was looking to continue dealing with Preble and refinance Preble's existing debt; and the Bank extended an <u>additional</u> $100,000 worth of credit to the borrower after writing the October letters.

The Bank will establish that the October letters track industry custom and are consistent with industry standards regarding commenting upon commercial credit information. The information in the letters was accurate. The Bank complied with Maine law in responding to its customer's request to prepare the

3

letters. The Bank owed no special duties to R&P and Four Seas. The Bank acted in good faith. R&P and Four Seas had their own independent duty to assess the financial information regarding <u>their</u> customer, Preble Fish.

### 2.  Background regarding Damage Issues.

The letters were not the proximate cause of any alleged damages incurred by R&P and Four Seas. The unpaid invoices were unpaid due to: Preble's failure to pay bills; R&P and Four Seas' failure to collect monies due them; and the fact of Preble's bankruptcy filing. The Bank was not the cause of the alleged harm.

Moreover, the alleged "preference claim" damages are an improper element of damages, as detailed in Defendant's Motion in Limine to exclude this evidence. In sum, those "damages" do not yet exist and are entirely speculative. To the extent the alleged preference claims have any relevance in this matter, any probative value is substantially outweighed by the by the danger of unfair prejudice to the Bank: the jury would undoubtedly be confused and misled if expected to differentiate between unpaid invoice damages asserted as caused by the Bank's October 2004 letter versus the separate and completely different preferential transfer calculations, purportedly sought by the bankruptcy trustee. Further, review of the bankruptcy proceedings reveals that the bankruptcy trustee has already compromised other claims for substantially lower dollars than the amounts of the payments in the preference period indicates that any claims by Plaintiffs that they would be required to pay anything more than $8,000.00 are unsubstantiated and misleading (claims of $113,110.00 and $43,492.00 each

4

resolved for $8,000.00—less than 10% and less than 20% of the total claims). The fact is that unless and until the bankruptcy court orders Plaintiffs to pay back any sums as preferential transfers, a "preference claim" element of damages is improper and does not belong in this case.

If Plaintiffs were to succeed in any claim against the Bank, the Bank contends that at most it could be negligent misrepresentation. The Record is devoid of any evidence of intentional conduct sufficient to sustain the intentional misrepresentation and 93A claims.

If liability were established, Plaintiffs' damages would at most be necessarily limited to a sum for unpaid invoices, not "preference claim" damages.

During discovery Plaintiffs have calculated the unpaid invoice total to include sums incurred *before* October 12, 2004 (the date of their receipt of the October 8, 2004 letters). The evidence will not support such a measure of damages.

Even calculating unpaid invoice damages from October 12, 2004 up to the date of the bankruptcy filing in January 2005 is inappropriate. It is the Bank's position that the unpaid invoice element of damages is more limited in scope. At most it can be measured from December 14, 2004 until the time when Plaintiffs became aware that the refinancing was not going to occur. Even utilizing the date that the SBA refused to go forward with the refinancing and hence, the Bank determined it could not refinance the Preble loans, up to the date of the Preble bankruptcy filing--the broadest timeframe within which damages can be

5

assessed—Plaintiffs' damages are modest. R&P invoice records reflect invoice totals of $13,785.45 for invoices between December 15, 2004 and January 4, 2005. Four Seas' invoice records reflect totals of $5,699.89 for invoices between December 17 and December 22, 2004.

### B.    Overview of Elements of Claims[1].

#### 1.    Tort Claims: Counts I and II: Negligent and Intentional Misrepresentation.

Generally, under Maine law a person is liable for negligent misrepresentation if he:

(1) gives false information,

(2) of material fact,

(3) for the guidance of others in their [business] transactions,

(4) and he fails to exercise reasonable care or competence in obtaining or communicating the information, and

(5) the plaintiff justifiably relies upon the information as true and acts upon it, causing him economic loss.

*See, e.g., Binette v. Dyer Library Association,* 688 A.2d 898, 902-906 (Me. 1996); *Brae Asset Fund v. Adam,* 661 A.2d 1137 (Me. 1995); *Devine v. Roche Biomedical Laboratories, Inc.,* 637 A.2d 441 (Me. 1994); *Chapman v. Rideout,* 568 A.2d 829 (Me. 1990); *see also Maine Jury Instruction Manual* (4th Ed. 2006) § 7-31. Plaintiffs must prove each of these elements by a preponderance of the evidence.

---

[1] The Court has not yet ruled on the pending Motion in Limine Regarding Choice of Law. Defendant has taken the position that Maine law applies to this case. Should the Court rule that Massachusetts law will apply to this action, then Defendant specifically reserves the right to offer supplemental briefing. *Cf., e.g.,* L.R.D.Mass. 16.5(F) (supplemental requests for rulings or instructions permitted after filing of trial brief to conform to subsequent developments).

Generally, under Maine law a person is liable for intentional misrepresentation if a fiduciary duty or other special relationship is demonstrated, and if each element of the claim for intentional misrepresentation is proven by clear and convincing evidence. The elements for intentional misrepresentation are that a person:

> (1) makes a false representation,
>
> (2) of a material fact,
>
> (3) with knowledge of its falsity or in reckless disregard of whether it is true or false,
>
> (4) for the purpose of inducing another to act or to refrain from acting in reliance on the representations, and
>
> (5) the plaintiff justifiably relies upon the representation as true and acts upon it, causing him economic loss.

*See, e.g., Glynn v. Atlantic Seaboard Corp.,* 1999 ME 53, 729 A.2d 117; *Spickler v. Greenberg,* 644 A.2d 469 (Me. 1994); *Ferrell v. Cox,* 617 A.2d 1003 (Me. 1992); *Jourdain v. Dineen,* 527 A.2d 1304 (Me. 1987); *Letellier v. Small,* 400 A.2d 371, 376 (Me. 1979); *see also Maine Jury Instruction Manual* (4th Ed. 2006) § 7-30

A duty to disclose, or to inquire and disclose, only exists where there is a statutory duty, a fiduciary or confidential relationship or other special circumstances. Abesent such special circumstances, there is no duty to disclose. To prove that a duty of disclosure exists a plaintiff must prove, by a perponderence of the evidence, the following:

> 1. that the plaintiffs placed trust and confidence in the defendant; and
>
> 2. that there was a great disparity of position and influence between the plaintiff and the defendant, favoring the defendant.

*See, e.g., Brae Asset Fund v. Adam,* 661 A.2d 1137 (Me. 1995) (citing *Diversified Foods, Inc. v. First Nat'l Bank of Boston,* 605 A.2d 609, 614 (Me. 1992) (citing *Ruebsamen v. Maddocks,* 340 A.2d 31, 35 (Me. 1975)). The Bank had no duty to disclose any information to R&P and Four Seas. It is not liable to Plaintiffs under either a negligent or an intentional misrepresentation theory.

Plaintiffs' basic premise woven through all of the claims asserted is that the Bank had a duty to disclose information to them, different from or beyond the information in the October 2004 letter. Yet, as Defendant addressed in its motion in limine regarding choice of law, Maine banking law is different from federal and Massachusetts law with regard to the disclosure of financial information. Maine does not limit its non-disclosure rules to <u>consumer</u> financial information. Rather, Maine law specifically prohibits disclosure of financial information with regard to <u>commercial</u> customers. *See* Maine Bureau of Banking Bulletin #71, July 9, 2001 ("Finally, institutions should be aware that Title 9-B chapter 16 also prohibits the disclosure of financial records held for commercial customers except under certain circumstances and exceptions.") (www.state.me.us/pfr/bkg/bulletins/bull71.htm). That is, Maine does not permit KSB to divulge the type of information that Plaintiffs claim should have been provided. Recognizing this fundamental distinction is a key to deciding the choice of law issue.

Under Maine law a bank may only disclose financial information about a customer, including a commercial customer: 1) at the customer's direction, 2) in response to legal process, 3) in response to a state request regarding enforcing a child support order, and 4) in response to a proper levy request issued by the Maine Department of Labor. *See* 9-B M.R.S.A. §§ 162-163. Penalties are imposed for

8

violations in the amount of up to $5,000 per violation imposed on the individual bank officer or employee and penalties of up to $10,000 per violation are imposed on the bank itself. *See* 9-B M.R.S.A. § 164(1). Penalties of up to $10,000 per violation are also imposed on any person who induced or attempts to induce disclosure. *See* 9-B M.R.S.A. § 164(2). KSB only divulged the information requested by its customer in accordance with 9-B M.R.S.A. § 162(1).

Maine standards are stricter than federal law. Federal banking regulations do not extend protection from disclosure to commercial customers. Congress enacted the Gramm-Leach-Bliley Act ("GLBA" or "the Act") for the purpose of creating requirements that financial institutions respect the privacy of their customers and to protect the security and confidentiality of those customers' nonpublic personal information. *See* 15 U.S.C. §§ 6801 et seq.[2] However, the definitions of "customer" and "consumer" are specifically limited to natural persons—not business entities. *See, e.g.,* 16 C.F.R. § 313.3(e)(1) ("*Consumer* means an individual who obtains or has obtained a financial product or service from you that is to be used primarily for personal, family, or household purposes, or that individual's legal representative."); *see also id* at § 313.3(h) ("*Customer* means a consumer who has a customer relationship with you."). Congress did not elect to include commercial credit transactions within the scope of the Act.

Massachusetts law is consistent with the less restrictive federal standard, rather than Maine law. *See, e.g.,* M.G.L. Ch. 167, § 2A (""Consumer transaction", a transaction between a bank and a natural person, in which the money, property or services are primarily for personal, family or household purposes."); M.G.L. 167B, § 1

---

[2] The Federal Financial Modernization Act, also known as the Gramm-Leach-Bliley Act (the "GLBA"), was enacted by Congress and signed into law in November 1999. The FTC issued related regulations at 16 C.F.R. §§ 313.1-18.

9

(""Consumer", a natural person."). Unlike Maine, the Massachusetts Division of Banks does not include <u>commercial</u> credit bank customers in regulations governing disclosure of credit information. *See, e.g.,* 209 C.M.R. § 32.03(1)(a) (exempting credit extended for a business, commercial, or agricultural purpose from disclosure rules); *see also* 209 C.M.R. § 40.02 (Unfair and Deceptive Practices in Consumer Transactions) ("Consumer means a natural person who seeks or acquires goods, services, or money for personal, family, or household use other than for the purchase of real property.").

A Maine bank is required to follow Maine's banking regulations. Any argument that KSB committed a wrongful act must be examined in terms of the requirements of the applicable provisions of Maine law, not Massachusetts law. The assertion of an alleged "duty" running between KSB and Plaintiffs can not stand where the imposition of a purported duty on its face is contrary to the regulations controlling the conduct of Maine banks. Maine law simply would not have allowed the Bank to gratuitously pick and choose supplemental information about Preble Fish and send it off to Plaintiffs. The Bank disclosed the information requested by its commercial customer—Preble Fish—to its customer—Preble Fish. Preble Fish delivered the information to Plaintiffs in the context of <u>Preble's</u> business relationships with the Plaintiffs. KSB's duty was to follow the requirements of Title 9-B chapter 16 of Maine statutory law, which it plainly did.

KSB's interests were to ensure that Preble's debt to KSB was paid and to comply with the confidentiality rules imposed on banks with regard to commercial credit under Maine law. Given these interests, any purported "duty" to undertake any conduct to benefit the non-customer Plaintiffs would be contrary to KSB's interests and obligations.

Given that Maine banking law prevents the finding of a duty of disclosure to Plaintiffs, it is plain that Maine law would not recognize Counts I & II of Plaintiffs' Complaint—the intentional and negligent misrepresentation claims. Those claims will not stand based on the Record.

### 2. Count V: Statutory 93A Claim.

As Defendant discussed in their choice of law motion, Count V, the section 93A claim, fails under Maine law, as recognized in a similar circumstance by the First Circuit in *Reicher v. Berkshire Life Ins. Co.,* 360 F.3d 1, 6 (1st Cir. 2004). The *Reicher* Court determined that a Massachusetts Section 93A claim could not stand, since Maryland—the state regulating the applicable insurance policies—had its own regulatory framework governing insurance disputes and duties between the parties. *Id.* Similarly, Maine regulates the duties upon banks, including the duty of nondisclosure with regard to commercial customer financial information. In particular, Maine not only identifies and limits the disclosure of financial records, but provides the means by which financial records may be produced pursuant to Court order (9-B Maine Revised Statutes Annotated § 163) and provides a statutory scheme for assessing violations of Maine laws regarding financial disclosures. *See* 9-B Maine Revised Statutes Annotated § 164. A Section 93A claim could not stand on the facts asserted in this litigation, in light of Maine's nondisclosure rules imposed on Maine banks.

Moreover, note that Maine courts have long held that as a creditor a bank owes no special fiduciary duties toward its debtors (let alone third-parties unrelated to the banking relationship). *See, e.g., Brae Asset Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995);

*First N.H. Banks Granite State v. Scarborough*, 615 A.2d 248, 250 (Me. 1992);

*Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 615 (Me. 1992).

Application of such principles as defined by Maine law would be germane to Plaintiffs claim that they were owed duties, given that they were a step removed from the banker-creditor relationship.  Simply put, given that KSB was not a party to any transaction with Plaintiffs, it is extremely unlikely they could sustain any duty of disclosure of any kind.  Applying Maine law, it would be likely that no duty to disclose could be sustained, however framed.  *Cf., e.g., Ray Larsen Assocs., Inc. v. Nikko Am. Inc.,* 1996 U.S. Dist. LEXIS 11163 at *5 (S.D.N.Y. Aug. 6, 1996) ("[a] review of the cases which recognize a duty to disclose due to one party's superior knowledge reveals that the duty ordinarily arises only in the context of business negotiations where parties are entering a contract." (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 155 (2d Cir. 1995) (explaining that the duty arises "in business negotiations"); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.,* 731 F.2d 112, 123 (2d Cir. 1984)).   No such circumstance is present in this case.  KSB did not engage in any business relationship with Plaintiffs.

## II.     Motions in Limine/Evidentiary Issues.

Defendants are filing herewith two motions in limine, asserting that evidence should be excluded at trial as follows:

### 1.     Defendant's Motion in Limine to Exclude Testimony of Richard A. Clarke.

Defendant is challenging Plaintiff's expert.  Filed herewith is a separate motion to exclude the testimony of Richard A. Clarke.

**2.    Defendant's Motion in Limine to Bar Introduction of Evidence of Purported Preference Claim Damages.**

Defendant is challenging an element of Plaintiffs' damages claim: the purported preference claim liability they assert they will incur as a result of the matter of the bankruptcy of Robert J. Preble & Sons, Inc. d/b/a Preble Fish Company, United States Bankruptcy Court, District of Maine, Case Nos. 05-20111 & 05-20112. Filed herewith is a separate motion to exclude this evidence.

**3.    Foreseeable Evidentiary Dispute:  Seafax Witnesses and/or Exhibits.**

Defendant foresees an additional evidentiary issue with regard to evidence from Seafax. Plaintiffs have indicated that they intend to call witness(es) from Seafax and/or introduce documents from Seafax. Defendant anticipates raising potential hearsay issues with such evidence, depending on how and for what purpose the information is utilized. F.R.Evid. 802. Also, Plaintiffs have referenced M.G.L.A. ch. 259, § 4 as applicable to this case (representations as to another's credit must be in writing). *See, e.g.,* Plaintiffs' Memorandum Regarding Choice of Law, Docket Entry No. 23 (May 10, 2006). To the extent that information from Seafax is based upon verbal, as opposed to written, information about Preble Fish, it would also be objectionable on the ground of relevance on this basis. F.R.Evid. 402.

In light of these concerns, the Seafax documents are listed on the separate list of Exhibits as to which the parties reserve objection, attached as <u>Exhibit C</u> to the Joint Pretrial Memorandum.

**III.    Proposed Statement of Claims & Defenses for Jury Empanelment.**

This case involves two Massachusetts businesses—two wholesale seafood distributors—R&P Seafood/Shellfish and Four Seas—and a Maine business, Kennebunk

13

Savings Bank.  These companies did not have a direct relationship with each other of any kind.  Rather, another business, Robert J. Preble & Sons or "Preble Fish" as it is known, was a customer of all three companies.

Preble experienced cash flow problems during 2004.  Preble fell behind on payment of invoices for seafood it bought from R&P and Four Seas.

In October 2004, Kennebunk Savings Bank wrote "To Whom it May Concern" letters which Preble Fish delivered to R&P and Four Seas.  The letters described the status of Preble's banking accounts with Kennebunk Savings.  The Bank wrote the letters at the request of its customer, Preble Fish.  Preble Fish hand-delivered copies of the letters to R&P and Four Seas.

The controversy in this case is essentially whether the Bank misled R&P and Four Seas with the information it provided to them about Preble Fish.  The letter described the status of Preble's account with the Bank as "satisfactory" and also referenced that the Bank was "considering" a refinancing package with Preble which "contemplates resolution in November 2004."

Ultimately the refinancing plans failed, because at a meeting held on December 14, 2004 the SBA, a necessary party, indicated it would not go forward with refinancing of their loans with Preble, and accordingly, the Bank could not refinance with Preble.  In January 2005 Preble filed for bankruptcy.  R&P and Four Seas are "unsecured creditors" in the bankruptcy proceedings.

R&P and Four Seas claimed that the Bank's conduct caused them harm.  They are asserting [two]/[three] legal claims which are:  negligent misrepresentation, intentional misrepresentation, [and a violation of Massachusetts' unfair and deceptive trade practices

14

law]. At the close of the case the Court will instruct you on the legal elements of each of these claims.

The Bank contends that:

- the October letters track industry custom and are consistent with industry standards regarding commenting upon commercial credit information.

- The information in the letters was true.

- The Bank complied with Maine law in responding to its customer's request to prepare the letters. The Bank owed no special duties to R&P and Four Seas.

- The Bank acted in good faith.

- R&P and Four Seas had their own independent duty to assess the financial information regarding their customer, Preble Fish.

- The Bank was not the cause of the alleged harm to R&P and Four Seas.

- Any damages to R&P and Four Seas would be a portion of the unpaid invoices for product Preble bought from December 14, 2004 to December 24, 2004.

You will be instructed fully on the law applicable to the case presented by the parties at the close of the evidence, before you are discharged for jury deliberations.

### IV.    Proposed Voir Dire Examination of Jury.

Defendant is filing separately herewith proposed voir dire questions.

### V.    Jury Instructions.

Defendant is filing separately herewith proposed jury instructions.

## VI.     Special Verdict Form.

Defendant intends to file separately a proposed special verdict form after the Court rules on the pending outstanding motions. L.R.D.Mass. 16.5(F) (supplemental requests for rulings or instructions permitted after filing of trial brief to conform to subsequent developments).

Dated at Portland, Maine, this 30th day of  May, 2006.


/s/ Lisa F. Bendetson

Lisa F. Bendetson, Esq. (BBO#567069)

/s/ James M. Bowie

James M. Bowie, Esq.
Attorneys for Defendant,
Kennebunk Savings Bank

**THOMPSON & BOWIE, LLP**
Three Canal Plaza
P.O. Box 4630
Portland, ME  04112
(207) 774-2500

**CERTIFICATE OF SERVICE**

I, James M. Bowie/Lisa F. Bendetson, attorney for Defendant, Kennebunk Savings Bank, hereby certify that I made service of the foregoing document titled: "Defendant's Trial Brief" with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following: Marc D. Kornitsky, Esq., and I hereby certify that on this date I did not mail by the United States Postal Service, said submission to non-registered participants as there are no non-registered participants for this case.

Dated at Portland, Maine, this 30th day of May, 2006.

/s/ Lisa F. Bendetson

Lisa F. Bendetson, Esq. (BBO#567069)

/s/ James M. Bowie

James M. Bowie, Esq.
Attorneys for Defendant, Kennebunk Savings Bank

**THOMPSON & BOWIE, LLP**
Three Canal Plaza
P.O. Box 4630
Portland, ME  04112
(207) 774-2500