IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

R & P SEAFOOD/SHELLFISH, INC., and,
FOUR SEAS, INC.
                    Plaintiffs,


                                            CIVIL ACTION NO. 05-cv-10420-MLW


KENNEBUNK SAVINGS BANK,

                    Defendant.


## PLAINTIFFS' TRIAL BRIEF

In early to mid October 2004, Kennebunk Savings Bank ("KSB" or the "Bank") provided its customer Preble Seafood ("Preble") with letters dated October 8, 2004 (the "letters") addressed to the plaintiffs' Boston addresses.  Plaintiffs allege that the Bank intentionally or negligently misrepresented the creditworthiness of its customer (Prebble Seafood) to the plaintiffs in the letters.  Plaintiffs further allege that the Bank's conduct was unfair and deceptive and violated M.G.L. c. 93A.  Plaintiffs claim that when the Bank chose to speak as to the customer's creditworthiness, it was required to do so accurately and completely.  The Bank did not do so, and further failed to subsequently correct the inaccuracies.  In reliance on the letters, plaintiffs allowed Preble to pick up fish on credit in Massachusetts.  Plaintiffs suffered significant losses.  Plaintiffs brief assumes that Massachusetts law will be the Choice of Law.

1

Pursuant to the Order setting case for Trial dated March 1, 2006 (Paragraph 6), plaintiffs address the procedural issues for the jury trial

1. **Motions in limine**

The defendant has filed Motions in limine challenging 1) the testimony of Mr. Clark and 2) evidence of preference claim damages. Plaintiffs will file Opposition Motions separately before the Pre-Trial Conference. Plaintiffs also intend to introduce testimony and evidence from Seafax, which defendants indicated they will challenge. Plaintiffs intend to challenge the defendant's expert witness at Trial and exclude his testimony. Mr. Lund has never testified in any court and appears to have insufficient experience to render opinions helpful in this case.

The plaintiffs further request that the court decide which of the following alternatives to employ for deciding the G.L. c. 93A issues:

1) let the jury find the facts on both claims;

2) decide all aspects of the Chapter 93A claim; or

3) ask the jury for nonbinding advisory findings on the Chapter 93A claim.

2. **Jury issues**

1. **Proposed Statement to be read to the venire**

The plaintiffs, R & P Seafood/Shellfish, Inc. and Four Seas, Inc. are two Massachusetts fish brokers. They allege that the Kennebunk Savings Bank, located in Maine, misrepresented the creditworthiness of the bank's customer, Preble Seafood. The alleged misrepresentations

2

were contained in letters dated October 8, 2004 addressed to the plaintiffs and written by the Bank at the request of Preble Seafood, which later filed for bankruptcy. The plaintiffs assert that they were damaged by the Bank's conduct. The Bank denies the plaintiffs' allegations.

2. **Proposed voir dire examination**

Plaintiffs have no objection to defendants following proposed voir dire questions:

> 1-20, 22-24, 27-28

Plaintiffs request the following voir dire:

a. Do you or any close family members work in banking or credit reporting?

3. **Jury Instructions**

Plaintiffs will file proposed jury instructions after the courts ruling on the pending Choice of Law Motion.

4. **Special Verdict Form**

Plaintiffs will file proposed jury instructions after the courts ruling on the pending Choice of Law Motion.

Plaintiffs address the Massachusetts law in this matter herewith.

## I.    INTENTIONAL MISREPRESENTATION

In an action for intentional misrepresentation, a plaintiff must prove "that the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied on such representation as true and acted on it to his damage." *Barrett Assocs., Inc. v. Aronson*, 346 Mass. 150, 152, 190 N.E.2d 867, 868 (1963) (quoting *Kilroy v. Barron*, 326 Mass. 464, 465, 95 N.E.2d 190, 191 (1950)). See also *Shaanxi Jinshan TCI Elecs. Corp. v. Boston Fin. Corp.*, 61 Mass.App.Ct. 41, 48 (2004); *Stolzoff v. Waste Systems International, Inc.*, 58 Mass.App.Ct. 747, 759 (2003).

A party to a transaction who chooses to either volunteer information or respond to a request for particular information is obligated to speak honestly and to divulge all material facts within his knowledge. *Kannavos v. Annino*, 356 Mass. 42, 48, 50, 247 N.E.2d 708, 711-13 (1969). The Bank spoke voluntarily. The Bank had no requirement whatsoever to speak as to the creditworthiness of its customer. The Bank failed to disclose all material facts in the Letters. The Bank did not disclose that the "refinancing" required the agreement of third parties, which had not yet been requested.

Representations about future events have been deemed actionable where one party to a transaction had, or was in a position where he or she should have had, superior knowledge about the matters to which the misrepresentations related. See *Gopen v. American Supply Co.*, 10 Mass.App.Ct. 342, 345, 407 N.E.2d 1255, 1257 (1980). The Bank did not request, nor reach agreement, that CEI/SBA would subordinate its lien to

4

the Bank prior to issuing the Letters. Only the Bank knew of this condition, not the plaintiffs.

The plaintiff in a fraudulent misrepresentation case is not necessarily required to show that a misstatement was made with the specific purpose of inducing his or her reliance. *Reisman v. KPMG Peat Marwick LLP*, 57 Mass.App.Ct. 100, 109 (2003) (citing Restatement (Second) of Torts § 531 (1977) ("One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced.")). See also *International Totalizing Sys. v. PepsiCo, Inc.*, 29 Mass.App.Ct. 424, 431 n.12 (1990). The evidence will show that plaintiffs relied on the Letters and the Bank knew the plaintiffs would likely rely.

The issue of whether a false statement was made with intent to induce reliance generally is a question of fact. See *Yorke v. Taylor*, 332 Mass. 368, 371, 124 N.E.2d 912, 914--15 (1955); *Rousseau v. Gelinas*, 24 Mass.App.Ct. 154, 157, 507 N.E.2d 265, 267--68 (1987). The Bank argues that the representations in the Letters were true. Statements made in such a way as to lull the buyer into trusting and placing confidence in the seller's representations may be actionable. *Snyder v. Sperry & Hutchinson Co.*, 368 Mass. at 444--45, 333 N.E.2d at 428; *Zimmerman v. Kent*, 31 Mass.App.Ct. at 80, 575 N.E.2d at 75--76. The Bank led the plaintiffs to believe that everything at Preble was handled satisfactory and a refinancing, by which the plaintiffs would be paid, was only weeks away. The Bank left the plaintiffs with an impression of Preble it should not have.

Through a minimum of diligence, such as a phone call to CEI, the Bank could and would have learned the difficulty in obtaining a subordination from the SBA. In the past, the Bank obtained subordinations from the SBA and it was not a simple process. Instead, the Bank waited until December to address the subordination with CEI/SBA.

The plaintiff in a misrepresentation action need not prove that the maker knew that the statement was false. Powell v. Rasmussen, 355 Mass. 117, 118, 243 N.E.2d 167, 168 (1969); *Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 81, 575 N.E.2d 70, 76 (1991). See *Acushnet Fed. Credit Union v. Roderick*, 26 Mass.App.Ct. 604, 605 n.1, 530 N.E.2d 1243, 1244-45 n.1 (1988) (knowledge of falsity not required where accurate facts reasonably available to speaker). The speaker need not know that the statement is false if the truth is reasonably susceptible of actual knowledge; that is, "if, through a modicum of diligence, accurate facts are available to the speaker." *Acushnet Fed. Credit Union v. Roderick*, 26 Mass.App.Ct. at 605 n.1, 530 N.E.2d at 1245 n.1. Where the plaintiff proves "a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge    it is not necessary to make any further proof of an actual intent to deceive." *Snyder v. Sperry & Hutchinson Co.*, 368 Mass. 433, 444, 333 N.E.2d 421, 428 (1975). See also *Powell v. Rasmussen*, 355 Mass. 117, 118, 243 N.E.2d 167, 168-69 (1969).

The Bank argues that the plaintiffs should have conducted their own investigation. The plaintiffs, who are fish brokers, received unsolicited written assurances from Preble's bank. The Bank did not send any further communications from the Bank. In fact, in July 2004 R & P pulled a credit inquiry from a credit company regarding Preble. The credit company, Seafax, relying on representations from the Bank, continued its

6

"recommended" status for Preble. R & P similarly relied on the Bank's representation at the much earlier date.

The recipient of a fraudulent misrepresentation of fact is justified in relying on its truth, even if an investigation may have revealed the falsity of the representation. See *Yorke v. Taylor*, 332 Mass. 368, 374, 124 N.E.2d 912, 916 (1955); *Henderson v. D'Annolfo*, 15 Mass.App.Ct. 413, 423, 446 N.E.2d 103, 109-10 (1983); Restatement (Second) of Torts § 540 (1977). Thus, the plaintiff need not make an independent investigation of the defendants in order to establish justifiable reliance on the defendant's representations. *McEvoy Travel Bureau Inc. v. Norton Co.*, 408 Mass. 704, 713, 563 N.E.2d 188, 194 (1990); *Yorke v. Taylor*, 332 Mass. at 374, 124 N.E.2d at 916.

## II.    NEGLIGENT MISREPRESENTATION

In order to recover for negligent misrepresentation plaintiffs must prove that the defendant (1) was acting in the course of his or her business, (2) supplied false information for the guidance of others in their business transactions, (3) failed to exercise reasonable care or competence in obtaining or communicating the false information, (4) the false information resulted in pecuniary loss to the plaintiffs, and (5) plaintiffs justifiably relied on the information. See *Nycal Corp. v. KPMG Peat Marwick LLP*, 426 Mass. 491, 496, 688 N.E.2d 1368, 1371 (1998); *Golber v. Baybank Valley Trust Co.*, 46 Mass.App.Ct. 256, 257, 704 N.E.2d 1191, 1192 (1999); *Fox v. F & J Gattozzi Corp.*, 41 Mass.App.Ct. 581, 587--88, 672 N.E.2d 547, 551--52 (1996); Restatement (Second) of Torts § 552 (1977).

7

It is not necessary for the plaintiff to prove that the defendant intended to provide inaccurate information. See *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 59--60 (2004); *Kitner v. CTW Transp., Inc.*, 53 Mass.App.Ct. 741, 749 (2002); *Fox v. F & J Gattozzi Corp.*, 41 Mass.App.Ct. 581, 587, 672 N.E.2d 547, 551 (1996). Under some circumstances, liability may be imposed upon a speaker, as is the case at bar, who fails to verify the accuracy of the information that is conveyed, particularly if the speaker holds himself or herself out as one who is qualified to provide expert advice in an area of specialized knowledge. See *Kelly v. Brigham & Women's Hosp.*, 51 Mass.App.Ct. 297, 312, 745 N.E.2d 969, 980 (2001).

The applicable measure of damages in an action for negligent misrepresentation is the amount necessary to compensate the plaintiff for the pecuniary loss caused by the misrepresentation. *Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 82, 575 N.E.2d 70, 76--77 (1991). Claims for pecuniary loss caused by negligent misrepresentation constitute an exception to the "economic loss doctrine," which prohibits recovery for purely pecuniary losses. See *Nota v. Keyes*, 45 Mass.App.Ct. 15, 20, 694 N.E.2d 401, 405 (1998).

Consequential damages include those that might reasonably be expected to result from reliance on the misrepresentation. See *Danca v. Taunton Sav. Bank*, 385 Mass. at 9, 429 N.E.2d at 1133-34. See also *Anzalone v. Strand*, 14 Mass.App.Ct. 45, 49, 436 N.E.2d 960, 962--63 (1982). Plaintiffs argue that they suffered losses from the sales to Preble after relying on the Letters and that they did not pursue collection of outstanding invoices as aggressively as they could have due to the misrepresentations and suffered losses for those amounts as well. R & P argues that it suffered losses on the misrepresentations

8

made by the Bank to Seafax.

### III.    G.L. c. 93A, § 11

### A. CONDUCT MUST HAVE OCCURRED "PRIMARILY AND SUBSTANTIALLY" IN MASSACHUSETTS

Conduct must have occurred "primarily and substantially" in Massachusetts. "Unless the …unfair or deceptive act or practice occurred primarily and substantially within the commonwealth" the action cannot be maintained. G.L. c. 93A, § 11. When deceptive statements are received and acted on in Massachusetts and the loss is suffered in Massachusetts, such connections are likely to be sufficient to meet the "primarily and substantially" requirement. *Bradley v. Dean Witter Realty, Inc.*, 967 F.Supp. 19, 29-30 (D. Mass. 1997).

In determining whether deceptive conduct occurred "primarily and substantially" in Massachusetts, the First Circuit has articulated three primary factors for courts to consider. First, the court should consider "where the defendant committed the deception." Second, the court will consider "where the plaintiff was deceived and acted upon the deception," and third, the court will look to the "status of plaintiff's losses due to the deception." *Garshman Co. v. Gen. Elec. Co.*, 176 F.3d 1, 13-16 (1st Cir. 1999). The most "critical factor" is where the plaintiff acted on the deception. *Compagnie de Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 90 (1st Cir. 1995). The least weighty factor in the First Circuit's analysis appears to be the location of the person making the deceptive statement. *Id.*, 57 F.3d at 90. The Bank, if it challenges the Chapter 93A claim on this basis bears the burden of establishing that the conduct at

issue did not occur "primarily and substantially" in Massachusetts. G.L. c. 93A, § 11
The evidence will clearly support a conclusion that the conduct did occur primarily and
substantially in Massachusetts.

### B. "TRADE OR COMMERCE" REQUIREMENT

The Chapter 93A action is viable as the unfair and deceptive act was committed
"in the conduct of any trade or commerce." Chapter 93A liability may lie in a situation in
which the plaintiff was victimized by a misrepresentation of the defendant, even when the
plaintiff and defendant had no direct business transaction. *Nota Construction Corp. v.
Keyes Associates, Inc.*, 45 Mass. App. Ct. 15, 694 N.E.2d 401 (1998).

### C. LIABILITY

"Negligent misrepresentation of fact the truth of which is reasonably capable of
ascertainment is an unfair and deceptive act or practice within the meaning of c. 93A, §
2(a)." *Glickman v. Brown*, 21 Mass.App.Ct. 229, 235, 486 N.E.2d 737 (1985). See also
*Golber v. Baybank Valley Trust Co.*, 46 Mass.App.Ct. 256, 704 N.E.2d 1191 (1999).

Because Chapter 93A does not define "unfair" or "deceptive," liability "is best
discerned from the circumstances of each case." *Kattar v Demoulas*, 433 Mass. at 13-
14,739 N.E.2d at 257; accord *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct.
610, 622 n.14, 642 N.E.2d 587, 595 n.14 (1994).

#### 1. Unfairness

A practice may be "unfair" without being deceptive or fraudulent. *Mass. Farm
Bureau Fed'n, Inc. v. Blue Cross of Mass., Inc.*, 403 Mass. 722, 532 N.E.2d 660 (1989).
The focus in determining "unfairness" is on the nature of the challenged conduct and on
the purpose and effect of that conduct. *Mass. Employers Ins. Exch. v. Propac-Mass, Inc.*,

420 Mass. 39, 648 N.E.2d 435 (1995). Unfairness is "determined from all the

circumstances." *Duclersaint v. Fed. Nat'l Mortgage ass'n*, 427 Mass. 809, 814, 696

N.E.2d 536, 540 (1998*)*. Factors in determining unfairness include the following:

• "whether the practice is within at least the penumbra of some common-law, statutory, or

other established concept of unfairness";

• "whether it is immoral, unethical, oppressive, or unscrupulous"; and

• whether it causes substantial injury to consumers or competitors or other businesses.

*PMP Assocs. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915, 917 (1975).

Another factor is whether the conduct is "unconscionable in any respect." *Datacomm*

*Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 778, 489 N.E.2d 185, 196 (1986).

A plaintiff's level of sophistication can be weighed in determining "unfairness." A

"plaintiff's conduct, his knowledge, and what he reasonably should have known may be

factors in determining whether an act or practice is unfair." *Swanson v. Bankers Life Co.*,

389 Mass. 345, 349, 450 N.E.2d 577, 580 (1983) (Section 9 case); *Madan v. Royal*

*Indem. Co.*, 26 Mass. App. Ct. 756, 763-64, 532 N.E.2d 1214, 1218 (1989) (Section  1

case).

## 2.  Deception

A practice can be "deceptive" if it can reasonably be found to have caused a

person to act differently from the way he or she otherwise would have acted. *Fraser*

*Eng'g Co. v. Desmond*, 26 Mass. App. Ct. 99, 104, 524 N.E.2d 110, 113 (1988). A person

need not show reliance. *Heller Fin. v. Ins. Co. of N. Am.*, 410 Mass. 400, 409, 570 N.E.2d

8, 13 (1991).  A failure to disclose information that may have influenced a buyer not to

enter into a commercial transaction may be "deceptive." *USM Corp. v. Arthur D. Little*

*Sys., Inc.*, 28 Mass. App. Ct. 108, 125, 546 N.E.2d 888, 897 (1989) (declining to find liability).

In order to prevail under Section 2, a business need not show that a misrepresentation was intentional. *VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct.* 610, 620-21, 642 N.E.2d 587, 595 (1994). Nor is the plaintiff required to show that the deceptive conduct was "knowing" or "willful." *Id.*, 37 Mass.App.Ct. at 621, 642 N.E.2d at 595. Deception resulting from negligence may be the basis for a Chapter 93A violation. *Linthicum v. Archambault*, 379 Mass. 381, 388, 398 N.E.2d 482, 487 (1979); *Glickman v. Brown*, 21 Mass. App. Ct. 229, 235, 486 N.E.2d 737, 741 (1985).

Common law fraud or misrepresentation may be the basis for an unfair or deceptive practice claim under Chapter 93A. *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 714, 563 N.E.2d 188, 194 (1990); *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 620, 642 N.E.2d 587, 595 (1994).

In some circumstances, a failure to disclose facts may provide the basis for a Chapter 93A violation. Even silence while a third person speaks may be the basis for recovery under Chapter 93A, if the speaker misrepresents a fact on which the listener relies, and the defendant knows or intends that the listener will act on the misrepresentation. *Fraser Eng'g Co. v. Desmond*, 26 Mass. App. Ct. 99, 104, 524 N.E.2d 10, 13 (1988) (developer's manager was present when contractor was told, falsely, that developer would pay for contractor's work).

### D.  CAUSATION

In order to recover damages under Chapter 93A, a business plaintiff must demonstrate that the offensive conduct caused the harm for which damages are sought.

12

*McCann v. Davis, Malm & D'Agostine*, 423 Mass. 558, 560-61, 669 N.E.2d 1077, 1079 (1996); *Fraser Eng'g Co. v. Desmond*, 26 Mass. App. Ct. 99, 104, 524 N.E.2d 110, 113 (1988).

### E. DAMAGES

A successful business plaintiff in a Chapter 93A action may recover "actual damages." G.L. c. 93A, § 11. Actual damages "are losses flowing directly from a wrongful act." *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 718, 563 N.E.2d 188, 197 (1990). They need not be proved with "mathematical certainty." *Kitner v. CTW Transp., Inc.*, 53 Mass. App. Ct. 741, 748, 762 N.E.2d 867, 873 (2002).

#### 1. Multiple Damages

Chapter 93A provides for double or treble damages in Section 11 cases if the violation is "willful" or "knowing." G.L. c. 93A, § 11. It is unclear when a violation rises to a level of "willful" or "knowing" conduct sufficient to trigger multiple damages. Appellate decisions have overturned some awards of multiple damages on the grounds that the conduct was not egregious enough to warrant punitive damages under the statute. See, e.g., *Cambridge Plating Co. v. NAPCO, Inc.*, 85 F.3d 752, 770 (1st Cir. 1996) ("evidence does not rise to the level of callousness or meretriciousness that would justify multiple damages"); *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 623, 642 N.E.2d 587, 596 (1994) ("inept blend of hopeful dissembling and dogged bumbling" did not "reflect the culpable state of mind required"); *Wasserman v. Agnastopoulos*, 22 Mass. App. Ct. 672, 680-81, 497 N.E.2d 19, 24-25 (1986) (record did not establish the "purposeful level of culpability" needed).

If there are no separate damages caused by the Chapter 93A violation and the damages merely duplicate damages awarded on another common law or statutory count, the court should use the amount awarded on another claim for purposes of multiplying damages. *Cherick Distribs., Inc. v. Polar Corp.*, 41 Mass. App. Ct. 125, 130, 669 N.E.2d 218, 222 (1996).

### F. ATTORNEY FEES

A business prevailing on a Chapter 93A claim is entitled to "reasonable attorney fees and costs." G.L. c. 93A, § 11. The award of attorney fees and costs is mandatory. A business plaintiff under Section 11 must show some "adverse effect." *Jet Line Servs., Inc. v. Am. Employers Ins. Co.*, 404 Mass. 706, 718, 537 N.E.2d 107, 115 (1989).

### G. JURY ISSUES

There is no right to trial by jury on a Chapter 93A claim. *Nei v. Burley*, 388 Mass. 307, 311-15, 446 N.E.2d 674, 677-79 (1983). When the facts of a Chapter 93A claim and related common law counts are substantially similar, judges may make one of three choices:

> 4) let the jury find the facts on both claims;
>
> 5) decide all aspects of the Chapter 93A claim; or
>
> 6) ask the jury for nonbinding advisory findings on the Chapter 93A claim.

*W. Oliver Tripp Co. v. Am. Hoechst Corp.*, 34 Mass. App. Ct. 744, 753, 616 N.E.2d 118, 125 (1993); *Acushnet Fed. Credit Union v. Roderick*, 26 Mass. App. Ct. 604, 606, 530 N.E.2d 1243, 1245 (1988).

14

Judges and juries may reach different conclusions and the trial judge is not bound by the jury's decision, but rather, the judge is free to conclude differently from the same evidence. *Guity v. Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 340, 631 N.E.2d 75, 76 (1994). Similarly, when an advisory jury verdict is used, the judge may reach a conclusion different from the jury's. See, e.g., *Augustine v. Rogers*, 47 Mass. App. Ct. 901, 901, 710 N.E.2d 1030, 1032 (1999).

Dated at Peabody, Massachusetts this 31st day of May, 2006.

/s/ Marc D. Kornitsky

_____

Marc D. Kornitsky, Esq.
Antico, Barrett, Burke & Kornitsky LLP
One Essex Green Drive
Peabody, MA 01960
(978) 532-5140
mkornitsky@abblegal.com
Attorney for Plaintiffs
Bar No. 564552

## Certificate of Service

I, Marc D. Kornitsky, attorney for the plaintiffs, hereby certify that I served a copy of this Plaintiffs' Trial Brief with the United States District Court for the District of Massachusetts using the CM/ECF system, which will send notification of such filing to Lisa F. Bendetson, Esq. and James M. Bowie, Esq.

    Dated at Peabody, Massachusetts this 31st day of May, 2006.

                    /s/ Marc D. Kornitsky

                    _____

                    Marc D. Kornitsky, Esq.