IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

R & P SEAFOOD/SHELLFISH, INC., and,
FOUR SEAS, INC.
                    Plaintiffs,


v                                                    CIVIL ACTION NO. 05-cv-10420-MLW


KENNEBUNK SAVINGS BANK,

                    Defendant.

_____

### PLAINTIFFS' OPPOSITION TO MOTION IN LIMINE TO EXCLUDE TESTIMONY OF RICHARD A. CLARKE

         Plaintiffs oppose the defendant's Motion in limine to exclude testimony of
Richard A. Clarke.  Defendant asserts, inter alia, that Mr. Clarke 1) lacks sufficient
qualifications and 2) that he lacks foundation for his opinions.  In short, Mr. Clarke is
qualified to assert his opinions, which meet the requirements of Rule 702 of the Federal
Rules of Evidence and the *Daubert* trilogy.

         A thorough reading of Mr. Clarke's deposition will reveal that the defendant did
not, at any time, inquire as to the basis of his opinions.  Nevertheless, there are several
instances in which Mr. Clarke replied with references to the source of his opinions.  Mr.
Clarke provided the defendant with several publications of Risk Management Associates,
formerly known as Robert Morris Associates ("RMA").  The RMA material provided at
deposition is entitled, "Credit Department Ethics", "Code of Ethics", "Commercial Credit
Information Exchange: A Two-Way Street", "Statement of Purpose", "A Lender's Guide
to Commercial Credit Information Exchange", "Statement of Principles for the Exchange

of Credit Information between Banks and Business Credit Grantors". See Trial Exhibit
(objections reserved) No. W.

On its website, RMA's Mission Statement provides,

"RMA is a member-driven professional association whose sole purpose is
to advance the use of sound risk principles in the financial services
industry. Helping our members understand sound risk principles will
contribute to enhanced profitability and more efficient allocation of capital
to support growth. Furthermore, individuals will be better prepared to
meet the needs of customers and to grow professionally. Our objective is
to further the ability of our members to identify, assess, and manage the
impacts of credit risk, operational risk, and market risk on their businesses
and their customers."
http://www.rmahq.org/RMA/AboutRMA/MissionStatement/

In the "Frequently Asked Questions" section of the RMA website, the following
s contained,

What is RMA?
Founded in 1914, The Risk Management Association (RMA) is a not-for-
profit, member-driven professional association whose sole purpose is to
advance the use of sound risk principles in the financial services industry.
RMA promotes an enterprise-wide approach to risk management that
focuses on credit risk, market risk, and operational risk.

Are you formerly the Robert Morris Associates?
Yes, on July 11, 2000, the name of the Association changed to more
accurately reflect RMA's expanding commitment to risk management best
practices.

What does RMA do?
RMA was founded in 1914 to help commercial bankers make better
lending decisions through the exchange of credit information. Today,
RMA is the only association that specializes in promoting effective and
prudent risk management practices for institutions of all sizes, across the
entire financial services industry. Headquartered in Philadelphia,
Pennsylvania, RMA has 3,000 institutional members that include banks of
all sizes as well as nonbank financial institutions. They are represented in
the Association by 16,000 risk management professionals in North
America and numerous cities overseas, including Hong Kong, Singapore,

Melbourne, Sydney, and London. Members meet regularly through RMA's strong chapter network.

http://www.rmahq.org/RMA/AboutRMA/FAQs/

RMA is a preeminent authority in the credit industry. Mr. Clarke considers RMA to be one of his clients. Mr. Clarke testified at his deposition as follows:



> "Q. Are you currently a member of RMA?
> A: No, but they're a client.
> Q. Okay. When you say, "they're a client," in what way?
> A. Over the past decade I have put on several areas of the country for RMA. I've spoken at their national convention. They continue to publish my materials and I continue to receive royalties on at least one publication. So there's an ongoing relationship with RMA." Clarke Deposition, p. 43, lines 9-18.

When Mr. Clarke was employed by banks, he was an RMA member. He explained,

> "Q. Where you ever an officer or holder of a particular position with RMA?
> A. No. I was a member, when I was in the banking community. But it's not customary for people who are not working for institutions, whether they're banks or finance companies, to continue their membership." Clarke Deposition, p. 43, lines 17-23.

Mr. Clarke listed the numerous articles written by him and published by RMA and his significant industry and consulting experience in his curriculum vitae and disclosures. Mr. Clarke is a leading authority on the issues at bar and his opinions will aid the jury in determining the issues.

Mr. Clarke provided the defendant with precise opinions when asked at deposition.

> "Q. And in this case, what is your position as to what the bank should have said, in terms of characterizing the relationship with Preble?
> A. There's a variety of ways that this would be handled. The bulk of my career was spent doing workouts and handling inquiries of troubled companies and this clearly was a troubled company. And the bank either should have refused to answer or if they did, they really should not have characterized it as satisfactory.
>      I think—again I haven't rally given this a lot of thought, as to what they should have done, but I would have stick to the facts and I would not have given an opinion and they did. And I certainly would never have cited a future fact.

I would not have volunteered the information without a specific inquiry and without a specific amount. I mean there are other things that happened there and I've got them listed throughout my notes, but I had no problem rendering the opinions that I did.

First of all, this is not a satisfactory credit, especially that the bank should not have acted in the fashion that they did. There—there's no right answer to what they should have done. I can give you some scenerios, if you want to take the time.

Q. Sure

A. One is not to answer. Another one is to simply say it's a long-standing customer or whatever the timeframe—I don't recall exactly when this started— and that they are experiencing difficulties, but the bank continues to work with them. Okay. That probably would be the gist of the answer or one alternative answer.

Another would simply be to talk about the length of the relationship, the balances, the loan amounts and not give a recommendation. And certainly no recommendation was warranted here under these circumstances.

Q.    Okay. When you say "recommendation," what do you mean by a recommendation?

A.    In effect, as to whether the bank considers them to be satisfactory. In effect, although they're not saying we ask you to ship, in effect that's what that letter did. That was a recommendation. That was saying, "Guys, it's okay. These guys are restructuring the credit and everything's hunky-dory," and it wasn't hunky-dory and the company was really in trouble.

And for openers, if you look at the balance sheet, I'm going to be very interested to see if Mr. Lund can say that a company that's book insolvent by several hundred thousand dollars before intangibles is a satisfactory relationship, especially with the comments and the documents about the importance of leverage.

I will be fascinated to find out why they didn't downgrade it to five, when it didn't improve after the credit presentation in the spring of '04. I mean there's all kinds of stuff here that, again, I'd be more than happy to discuss with you and I'm sure we'll be discussing it at trial. Clarke Deposition, p. 49, line 13 – p. 51, line 23.

Mr. Clarke is extremely qualified to render his expert opinions. The defendant's argument to exclude his testimony is similar to saying the professor can't testify about issues in the classroom because it's been a long time since he has been a student. The defendant doesn't want Mr. Clarke's opinion because he is a well qualified expert rendering an adverse opinion that is well grounded in fact and will assist the jury in reaching a verdict in this case.

Dated at Peabody, Massachusetts this 31st day of May, 2006.

/s/ Marc D. Kornitsky

_____

Marc D. Kornitsky, Esq.
Antico, Barrett, Burke & Kornitsky LLP
One Essex Green Drive
Peabody, MA 01960
(978) 532-5140
mkornitsky@abblegal.com
Attorney for Plaintiffs
Bar No. 564552

## Certificate of Service

I, Marc D. Kornitsky, attorney for the plaintiffs, hereby certify that I served a copy of this Plaintiffs' Trial Brief with the United States District Court for the District of Massachusetts using the CM/ECF system, which will send notification of such filing to Lisa F. Bendetson, Esq. and James M. Bowie, Esq.

Dated at Peabody, Massachusetts this 2nd day of June, 2006.

/s/ Marc D. Kornitsky

_____

Marc D. Kornitsky, Esq.